ROSE'S STORES, INC., PLAINTIFF v. HARLAN E. BOYLES, STATE TREASURER OF THE STATE OF NORTH CAROLINA; AND THE DEPARTMENT OF THE STATE TREASURER, DEFENDANTS

No. 919SC503

(Filed 19 May 1992)

**Abandoned, Lost, and Escheated Property § 15 (NCI4th) — unrefunded layaway payments — abandoned property — escheat to State**

Layaway payments made by retail customers who failed to complete the purchases but who did not request a refund of their payments constituted property held in the ordinary course of the holder's business and became abandoned property subject to escheat to the State pursuant to N.C.G.S. § 116B-21 after they had been held by the retailer for greater than five years.

**Am Jur 2d, Abandoned, Lost, and Unclaimed Property § 6.**

**Validity, construction, and application of lost or abandoned goods statutes. 23 ALR4th 1025.**

APPEAL by the defendants from an order entered 11 January 1991 by *Judge Henry W. Hight, Jr.* in VANCE County Superior Court. Heard in the Court of Appeals on 17 March 1992.

*George T. Blackburn, II, Vice President, General Counsel, for plaintiff-appellee.*

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Douglas A. Johnston, for the defendants-appellants.*

LEWIS, Judge.

Plaintiff-appellee, Rose's Stores, Inc., is a Delaware corporation with an office and principal place of business in Henderson, North Carolina. Appellee operates retail stores in eleven southeastern states. Defendants-appellants are the Treasurer of North Carolina and the Department of the State Treasury. Incident to its sales, Rose's furnishes a layaway service under the terms of which the customer agrees to purchase a retail item or items from one of Rose's stores. After the customer signs the layaway agreement, Rose's removes the item from the sales floor and places it in the stockroom. Pursuant to the agreement, the customer is required to make periodic payments toward the purchase of this item. Upon completion of the payments, the customer receives the item. If the customer fails to make all of the payments, the item is returned to the sales floor. Company policy is that the amount paid on the layaway item is retained by Rose's or returned to the customer upon request.

Rose's treats all layaway transactions as sales for the contract price from the date of layaway. The proceeds of the sale are counted as income and the appropriate sales tax is remitted to the North Carolina State Treasury. The customer's payments on the item are reflected in Rose's accounts receivable. During an October 1988 audit, appellants discovered a considerable sum of accumulated layaway payments retained by Rose's on items which had been returned to the sales floor. Appellants claimed that these funds were abandoned property which should escheat to the State and demanded that Rose's deliver these funds pursuant to N.C.G.S. § 116B-21. Prior to this audit, appellants had not labeled layaway payments as unclaimed or abandoned property and had not required Rose's or other retailers to deliver these funds to the State. Since this audit, appellants have notified other retailers that they must remit these funds to the State.

Rose's filed suit on 19 September 1990 seeking a declaratory judgment on the application of N.C.G.S. § 116B-21 in the context of layaway transactions. By order entered 11 January 1991, the trial court held that layaway payments made by customers who failed to complete the purchase, but who did not request a return of their payments, were not subject to the escheat statute. The Treasurer and the Department appeal.

At early common law, the property of an intestate, who died without heirs, escheated to the crown. Now, all property present within this State which is determined to be unclaimed or abandoned escheats to North Carolina's Escheat Fund. N.C.G.S. §§ 116B-2, 116B-11, and 116B-27 (1990). The statute makes the State a custodian of the property or its proceeds for the rightful owners. As a mere custodian, the State holds the property or its proceeds in perpetuity until rightful ownership is determined. The property or its proceeds is held in the trust with the income distributed annually to the State Education Assistance Authority for loans to needy students. N.C.G.S. §§ 116B-36(b) and 116B-37. The Escheat Fund must maintain a $5,000,000.00 permanent refund reserve in order to pay "refunds of escheated or abandoned property to persons entitled thereto." N.C.G.S. § 116B-36(f) (1990). Upon proving their claims, heirs and creditors may obtain the escheated property or its proceeds, N.C.G.S. § 116B-4, and owners, or their successors-in-interest, may obtain the abandoned property or its proceeds. N.C.G.S. § 116B-38.

The State Treasurer is the administrator of the Escheat Fund. N.C.G.S. § 116B-27 (1990). The administration of the Fund is governed by N.C.G.S. §§ 116B-1 through 116B-49. The sections relevant to this appeal provide:

Property held in the ordinary course of business.

(a) Property.—All property, not otherwise covered in this Chapter, held in the ordinary course of the *holder's* business, including accounts payable and other obligations of any type, shall be presumed abandoned if it has not been claimed within five years after becoming payable or distributable. . . .

N.C.G.S. § 116B-21 (1990) (emphasis added). A holder is "any person in possession of property subject to this Chapter belonging to another. . . ." N.C.G.S. § 116B-10(4) (1990). An owner is "any person having a legal or equitable interest in property subject to this Chapter, or his legal representative." N.C.G.S. § 116B-10(6) (1990).

Property which is held in the ordinary course of business is deemed abandoned and subject to escheat when it is: 1) any item of property, not otherwise specifically covered under the escheat statute, 2) in the possession of one not the owner, and 3) held for five years after the sum becomes payable or distributable. N.C.G.S. § 116B-21 (1990). Rose's does not dispute that layaway

payments meet the first part of the test. Rose's disputes both the second and third parts. Rose's argued and the trial court concluded, with regard to the unrefunded layaway payments, that Rose's is not a holder, the layaway customers are not owners, the sum is not property held in the ordinary course of business, is not payable or distributable, and is not unclaimed or abandoned personal property.

Rose's claims that these layaway payments are not abandoned within the meaning of the statute because the funds never leave the owner's possession. According to this argument, money enters the store in the customer-owner's possession. Upon tender as a layaway payment, Rose's becomes the *owner* due to its accounting of the money as income and its paying the appropriate sales tax. In the alternative, Rose's argues that the funds are not subject to escheat because they are not payable or distributable until the damages resulting from the incomplete layaway transaction have been determined. We do not agree. For the following reasons, we reverse the trial court.

Because it permits refunds, Rose's is not the owner of the layaway funds. Rose's refunds, upon request, the total of the accumulated layaway payments, less a $2.00 service charge. The parties stipulated that the layaway agreement is a contract for the sale of goods. Rose's policy on refunds is a material part of this contract. Should Rose's refuse to repay the amount paid in, the customer could sue on the layaway contract and get a refund. As long as a customer may get a refund, merely possession of the funds, not ownership, has been ceded. Rose's asserts it never refuses to refund layaway payments when requested. At the very least, the customer retains an equitable interest in the money. The retention of a legal or an equitable interest in the funds makes the customer the statutory owner of the layaway payments. N.C.G.S. § 116B-10(6) (1990). Since Rose's maintains physical possession of the layaway payments and the goods pursuant to a contract for the sale of goods, Rose's is a holder of the funds in the course of business. As a holder, not an owner, the layaway funds within its control are subject to the escheat statute.

Pursuant to its belief in its ownership of the unclaimed funds, Rose's argues that its policy of returning the accumulated payments upon request does not waive its right, as the owner, to keep the money. The trial court agreed and concluded the refund policy

ROSE'S STORES, INC. v. BOYLES

[106 N.C. App. 263 (1992)]

did not constitute waiver. As we have determined that Rose's is not the owner, but a holder, waiver is not an issue. The layaway customers remain the owners of the payments despite Rose's possession of the funds. Under our escheat statute, the State steps into the shoes of the absent owner after a five year period of separation of property from owner and takes possession until such time as the owner asserts title. As custodian, the State's rights in this property are derivative in nature. Pursuant to its derivative rights, the State may assert the absent customer-owner's right to reclaim and retrieve the unrefunded layaway payments from Rose's possession. Rose's argument and the trial court's holding to the contrary are overruled.

Rose's argues that the intent of the layaway contract determines the ownership of the funds. Rose's claims that it did not intend to be a "holder" as evidenced by its accounting practices. This argument is misplaced. Neither Rose's intentions, nor its actions override a statute. Rose's is a holder, despite its payment of sales taxes or its accounting methods, but is not penalized for this status. First, the Sales and Use Tax Division of the North Carolina Department of Revenue indicated by letter to the Administrator of the Escheat Fund that North Carolina does not require the payment of sales taxes upon layaway payments until the final payment is received and the customer takes possession of the merchandise. Second, Rose's is immunized from liability for the value of the layaway payments once they are delivered to the escheat fund. N.C.G.S. § 116B-32 (1990).

In the alternative, Rose's argues that the layaway funds are not subject to escheat because they are not payable or distributable until the damages resulting from the incomplete layaway transaction have been determined. Upon a customer's default, various damages result. Rose's claims that it needs to retain the unrefunded layaway payments to cover these damages. It is this element of default which Rose's argues sets layaway payments apart from all other types of escheatable property. Other property held to escheat, such as the contents of safety deposit boxes, are not purchased from the holder. These items placed with the holder are paid in full and generate merely storage costs for the holder. In contrast, default on a layaway contract generates not only holding costs, but resale and markdown expenses. Rose's concedes, however, that once damages have been deducted, the amount remaining may escheat.

We recognize that some damage may result from an incompleted layaway contract. However, the statute specifically provides a means for holders to recoup these amounts. "Lawful charges may be deducted from property that is presumed to be abandoned, provided the lawful charges are specifically authorized by statute or by a *valid enforceable contract*." N.C.G.S. § 116B-21(b) (1990) (emphasis added). Rose's did not provide for this eventuality. It could have contracted to cover such damages but for reasons not appearing in the record, it did not choose so to do.

Permitting Rose's to retain the unrefunded layaway payments creates a de facto forfeiture of the customer's funds in favor of Rose's. Forfeitures for breach of contract are abhorred. The Federal Trade Commission (FTC) has held that layaway provisions which permit the seller to keep all of the layaway payments are adhesive and unfair. *See, S. Klein, Inc.*, 95 FTC 387 (1980); *See Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 262, 266 S.E.2d 610, 620 (1980), *overruled on other grounds, Myers & Chapman Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 374 S.E.2d 385 (1988), *reh'g denied*, 324 N.C. 117, 377 S.E.2d 235 (1989) (our courts accept FTC rulings when applying our Unfair and Deceptive Trade Act). Although forfeitures are not favored, provisions in a contract to deal with potential default situations are acceptable as liquidated damages if: 1) it is a fixed, agreed upon sum, 2) contained within a valid contract, 3) damages are otherwise difficult to ascertain due to uncertainty, and 4) the fixed amount is a reasonable estimate of the projected damages or is a reasonable proportion of the actual damages. *Knutton v. Cofield*, 273 N.C. 355, 361, 160 S.E.2d 29, 34 (1968). The layaway contract at issue meets only the uncertainty requirement of part three. Because it does not meet all four of the requirements, Rose's may not seek liquidated damages by simply retaining the layaway payments.

Rose's argues further that the customer must demand a refund prior to the funds being deemed abandoned and subject to escheat. We note that the escheat statute does not require the customer to make a demand for the return of the item before it is deemed to be abandoned property. In fact, the statute clearly indicates that property is considered abandoned after five years have passed since the last assertion of ownership. The only instance in which customer demand is relevant is where there is a danger that the customer will receive a double recovery. It is on this basis that we distinguish the case upon which Rose's relies: *North Carolina*

*State Treasurer v. City of Asheville*, 61 N.C. App. 140, 300 S.E.2d 283 (1983).

In that case, the State Treasurer claimed that the unrefunded purchase price of tickets to a cancelled Elvis Presley concert escheated to the State. The court reasoned that even though the tickets would no longer impart the benefit for which they were purchased, these unreturned tickets still had value as collector's items. This Court held that absent a presentation of the ticket and a demand for a refund, the ticket proceeds were not abandoned and did not escheat as the purchasers had elected to retain the tickets for their sentimental or pecuniary value. This reasoning seems to indicate that even though one party breached the contract, each side received a benefit from the bargain. Had this Court permitted the State to step into the shoes of the customer and to retrieve the unrefunded ticket proceeds, then this would be tantamount to letting ticket holders obtain a refund and keep the valuable memorabilia. In that instance, the "ticket holder would be unjustly enriched. . . ." *Id.* at 142, 300 S.E.2d at 285.

In the case at bar, the layaway customers receive nothing in return for their monetary investment until they make the final payment and take possession of the merchandise. There is no inherent value, either sentimental or pecuniary, in a layaway deposit slip. The State may retrieve and hold the layaway deposits until the rightful owners come forward to claim the funds.

We hold that the unrefunded layaway payments held by Rose's for greater than five years are abandoned property subject to escheat to the State pursuant to N.C.G.S. § 116B-21. The trial court ruling is reversed and this case is remanded for judgment in accordance with this opinion.

Reversed.

Judges ARNOLD and WYNN concur.