OPINION
WILKINSON, Circuit Judge:
The question in this case is whether a debtor-seller corporation’s return of a buyer corporation’s down payment on a contract for the purchase of machines constituted a preferential transfer under 11 U.S.C. § 547(b). We hold that the debtor had a property interest in the down payment, and that the return of that payment was made on account of an antecedent debt for the benefit of a creditor. We thus affirm the district court’s judgment that the return payment constituted an avoidable preference.
I.
On April 15, 1987, Royal Cake Company, Inc. entered into a conditional sales agreement to purchase four carton-packer machines from Cybermech, Inc.[1] The agreement provided that (1) Cybermech would install one prototype machine at Royal’s manufacturing facility for a thirty-day period, (2) Royal would order up to four machines if it was satisfied with the prototype, and (3) Royal would have no obligation to Cyber-mech if it was not satisfied with the prototype. Pursuant to the agreement, Cyber-mech manufactured a production prototype machine and delivered it to Royal for a trial period.
On July 23, 1987, Vann Sistare, Vice President of Operations of Cybermech, wrote a letter to Royal setting forth the price, the delivery date, and the payment terms for the four machines that Royal could order. The stated terms required Royal to make a “one-third ® down payment with [its] order.” On July 30, 1987, Royal placed an order for four carton-packer machines. Along with the order, Royal sent a check made out to Cyber-mech for $33,306.67 and a letter stating that the check was intended to “cover the ]é requested for down payment.” On August 3, 1987, Sistare deposited the check into Cyber-meeh’s bank account.
On August 24, 1987, George Lewis, President of Cybermech, sent a letter to Royal stating that Cybermech could not “execute this project as originally planned” because of its “current business climate.” Enclosed with the letter was a cashier’s check for $33,306.67 representing “the down payment *820 previously received on the subject purchase order.”
Three weeks later, on September 16, Cy-bermech filed a voluntary Chapter 7 Bankruptcy Petition. On July 28, 1989, Wayne Sigmon, the bankruptcy trustee for Cyber-meeh, filed a suit in bankruptcy court to recover the money that Cybermech had transferred to Royal on August 24, 1987. The bankruptcy court ruled that the $33,-306.67 transfer occurred during the ninety-day pre-petition preference period when Cy-bermech was insolvent, and that it gave Royal more money than it would have obtained as a bankruptcy creditor. The court later found that the transfer was made on account of an antecedent debt for the benefit of a Cybermech creditor. The court concluded that the transfer was an avoidable preference and ordered Royal to pay Cybermech $33,-306.67 plus interest accrued from the date of demand, July 27, 1989. The district court affirmed the bankruptcy court’s order. Royal now appeals the court’s ruling on the preference issue and the award of prejudgment interest.
II.
Section 547(b) of the Bankruptcy Code provides that the trustee may recover certain transfers of property made by the debtor during the ninety-day period preceding the bankruptcy filing. In order for a transfer to be set aside as a preference, it must meet the six conditions set forth in the section. The transfer must have been: “[1] of an interest of the debtor in property[;] [2] to or for the benefit of a creditor; [3] for or on account of an antecedent debt owed by the debtor before such transfer was made; [4] made while the debtor was insolvent; [5] made[ ] on or within 90 days before the date of the filing of the petition;” and [6] it must have “enable[d] such creditor to receive more than such creditor would receive [under a Chapter 7 liquidation of the estate].” 11 U.S.C. § 547(b); see also In re Barefoot, 952 F.2d 795, 798 (4th Cir.1991). Royal challenges the existence of the first three requirements. We address each of the disputed elements in turn.
A.
Royal first contends that Cybermech’s August 24 payment of $33,306.67 to Royal was not a “transfer of an interest of the debtor in property” because Cybermech did not have a property interest in that money. Under the Bankruptcy Code, the definition of “interest in property” is governed largely by state law. See Barnhill v. Johnson, — U.S. -, -, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992). Royal claims that its $33,306.67 payment was collateral held in trust by Cybermech on Royal’s behalf, and that, under North Carolina property law and federal bankruptcy law, the seller of goods does not hold a property interest in such collateral. See 11 U.S.C. § 541(b)(1) (stating that property of the debtor does not include assets being held by the debtor in trust for another).
The flaw in Royal’s argument is that its payment of $33,306.67 to Cybermech was not mere “collateral” or a “deposit,” but rather was Royal’s first payment for the machines. By sending the payment check, Royal was fulfilling its obligation under the sales contract, not merely guaranteeing future performance of its payment obligations. Indeed, Royal’s own letter accompanying its check characterized the payment as a “down payment,” not as “collateral” or as a “security deposit.” Accordingly, the payment was not Royal’s property being held in trust by Cy-bermech, but Cybermeeh’s property which it was entitled — and expected — to deposit into its own bank account. Once Cybermech deposited Royal’s check into its account, commingling the money with its other funds, Cybermech had a right to withdraw, transfer, or otherwise use the payment funds in any way it wanted.[2] Cybermech’s ability to *821 exercise complete “dominion and control over the funds” is sufficient to “demonstrate an interest in property” under the preferential transfer provision. In re Smith, 966 F.2d 1527, 1531 (7th Cir.1992). Therefore, the $33,306.67 transferred on August 24, 1987, was a transfer of an “interest of the debtor in property.”
B.
Royal next contends that the transfer was not made for the benefit of a “creditor.” The Code defines “creditor” as an “entity that 'has a claim against the debtor.” 11 U.S.C. § 101(10)(A). Royal argues that it cannot be considered Cybermech’s “creditor” because it suffered no damages from Cybermeeh’s repudiation of the sales contract and, therefore, had no “claim” against Cybermech for damages.
Royal’s argument, however, ignores the Code’s broad definition of “claim” as
(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment [of any kind].
11 U.S.C. § 101(5) (emphasis added). By enacting this definition, Congress gave the “broadest possible definition” to the term “claim” in order to ensure that “all legal obligations of the debtor, no matter how remote or contingent, [would] be dealt with in the bankruptcy case.” S.REP. NO. 989, 95th Cong., 2d Sess. 22, reprinted in 1978 U.S.C.C.A.N. 5787, 5808 (emphasis added); see also H.R.REP. NO. 595, 95th Cong., 2d Sess. 309, reprinted in 1978 U.S.C.C.A.N. 5963, 6266 (same); see also Ohio v. Kovacs, 469 U.S. 274, 279, 105 S.Ct. 705, 707, 83 L.Ed.2d 649 (1985) (stating that Congress intended that the term “claim” would be used in its broadest sense).
In our view, Royal had a “claim” against Cybermech as of August 3, 1987, when Cy-bermech received Royal’s payment check and deposited it into its own account. Cyber-mech’s acceptance of Royal’s payment gave rise to a duty on the part of Cybermech either to produce the four carton-packer machines or to refund the down payment. Correspondingly, the August 3 payment gave Royal the right to demand either performance or a refund. In other words, Royal had either (1) a restitutionary “right to payment” or (2) a “right to an equitable remedy for breach of performance” contingent upon Cybermech’s failure to deliver the four machines. See N.C.GEN.STAT. §§ 25-2-711(l)(b) & 25-2-711(2)(b) (1986). Royal’s rights against Cybermech, albeit contingent and remote, fell within the Bankruptcy Code’s definition of “claim” and thereby rendered Royal a “creditor” of Cybermech as of August 3, 1987. See In re Gold Coast Seed Co., 751 F.2d 1118, 1119 (9th Cir.1985) (holding that a seller acquired a “claim” against the buyer at the time the buyer received and accepted the goods).
Our conclusion is strengthened by the fact that Cybermech repudiated the contract on August 24, 1987. Cybermech’s repudiation gave Royal the right to pursue damages for breach of contract, including recovery of its first payment for the machines. See N.C.GEN.STAT. § 25-2-711(l)(b) (1986). This matured and fixed “right to payment” was more than sufficient to satisfy the definition of a “claim.” See In re Energy Coop., Inc., 832 F.2d 997, 1002 (7th Cir.1987) (holding that a buyer’s repudiation of a purchase agreement gave rise to a “claim”). Accordingly, Royal was a “creditor” of Cybermech, and Cybermech’s $33,306.67 transfer was made “to [and] for the benefit of a creditor.” 11 U.S.C. § 547(b)(1).
C.
Finally, Royal challenges the existence of the third prong of § 547(b) — the requirement of an “antecedent debt.” To satisfy the “antecedent debt” requirement, Cybermech must have owed a “debt” to Royal, and that debt must have been incurred *822 “before [the] transfer was made.” 11 U.S.C. § 547(b)(2). Royal argues that the “antecedent debt” prong was not satisfied because (1) Cybermech never owed a debt to Royal, and (2) even if there were any debt, it was not “antecedent” to the transfer. According to Royal, Cybermech did not incur the debt, if at all, until Cybermeeh’s repudiation of the sales agreement on August 24, the date of the transfer.
We disagree. The Code defines “debt” as “liability on a claim.” 11 U.S.C. § 101(12). By making “claim” the operative term in the definition of debt, “Congress gave debt the same broad meaning it gave claim.” In re Energy Coop., 832 F.2d at 1001. Indeed, it is clear that “the terms ‘debt’ and ‘claim’ are coextensive: a creditor has a ‘claim’ against the debtor; the debtor owes a ‘debt’ to the creditor.” S.REP. NO. 989, at 23, reprinted in 1978 U.S.C.C.A.N. at 5809; see also H.R.REP. NO. 595, at 310, reprinted in 1978 U.S.C.C.A.N. at 6267 (same). By defining debt as “liability on a claim,” Congress did not impose an additional element, namely that legal liability be established through litigation. “[W]hen a claim exists, so does a debt.” In re Energy Coop., 832 F.2d at 1002. They are but different windows on the same room.
As we have already stated, Royal obtained a “claim” against Cybermech when Cyber-mech received and deposited Royal’s payment for the machines on August 3, 1987. The fact that Royal did not have a cause of action against Cybermech until August 24 is irrelevant, because the Code does not limit the definition of “claims” to actual causes of action. See 11 U.S.C. § 101(5). Cybermech also incurred a “debt” on August 3, the same day that Royal obtained its “claim.” Because the debt was incurred some three weeks before the transfer, the refund payment to Royal was plainly made “on account of [that] antecedent debt.” 11 U.S.C. § 547(b)(2).
D.
Congress enacted the preference provision in order to “prevent favoritism among the debtor’s creditors who ought in fairness to stand on the same footing.” 4 Collier on Bankruptcy ¶ 547.05, at 547-36 (15th ed. 1992); see also In re Smith, 966 F.2d 1527 (7th Cir.1992) (“avoidance power promotes the ‘prime bankruptcy policy of equality of distribution among creditors’ ”) (citations omitted). If Cybermech had not delivered its refund check on August 24, only three weeks before filing for bankruptcy, the $33,-306.67 would have become a part of Cyber-mech’s estate, see 11 U.S.C. § 541(a), and benefitted all Cybermech creditors collectively. Instead, Cybermech favored Royal at the expense of other similarly situated creditors by making the August 24 transfer and thereby depleting the funds of the estate. This is precisely the type of transfer the preference provision was enacted to void. We therefore conclude that the district court was correct in ruling that Cybermech’s trustee was entitled to avoid Cybermech’s payment of $33,306.67 under 11 U.S.C. § 547(b).
III.
Royal also challenges the bankruptcy court’s decision to award prejudgment interest to Cybermech’s trustee. We find no merit in this challenge. It is well-settled that bankruptcy courts have discretion to award prejudgment interest in § 547 preferential transfer actions, and to compute that interest from the date of demand for the return of the transferred funds. See In re Investment Bankers, Inc., 4 F.3d 1556, 1566 (10th Cir.1993); Smith v. Mark Twain Nat’l Bank, 805 F.2d 278, 291 (8th Cir.1986); see also Kaufman v. Tredway, 195 U.S. 271, 273, 25 S.Ct. 33, 34, 49 L.Ed. 190 (1904) (holding that prejudgment interest may be awarded under the preference provision of an earlier Bankruptcy Act). Indeed, such awards have been encouraged in eases where they “would serve to compensate the injured party” and are otherwise equitable. Investment Bankers, 4 F.3d at 1566.
Royal has no more right to keep the interest accrued on the $33,306.67 than it has to keep the principal amount of the avoidable preference itself. Indeed, if Cybermech had not made the preferential transfer, Cyber-mech’s estate would have benefitted from the resulting interest on that money. The award of prejudgment interest therefore serves to “compensate the debtor’s estate for appel *823 lant[’s] use of those funds that were wrongfully withheld from the debtor’s estate during the pendency of the current suit.” Investment Bankers, 4 F.3d at 1566. Moreover, the interest award furthers the “prime bankruptcy policy of equality of distribution among creditors,” H.R.Rep. No. 595, at 178, reprinted in 1978 U.S.C.C.A.N. at 6138, by ensuring that all similarly-situated creditors will receive the same pro rata share of the interest on erroneously transferred funds. We thus hold that the bankruptcy court acted within its discretion in awarding prejudgment interest from July 27, 1989, when Cy-bermeeh’s trustee first complained of the preferential transfer.
IV.
For the foregoing reasons, the judgment of the district court is

AFFIRMED.

. The contract named Automation, Inc. instead of Cybermech as the seller. However, both parties agree that the reference to Automation was a mistake, and that Cybermech was the intended party to the contract.

. This fact distinguishes this case from the only North Carolina case cited by Royal: Rose’s Stores, Inc. v. Boyles, 106 N.C.App. 263, 416 S.E.2d 200 (1992), review granted, 332 N.C. 484, 421 S.E.2d 356 (1992). In Boyles, the seller store had an agreement with the buyers that their layaway advance payments would be returned to them if they decided not to make the purchase. See id. at 201. Therefore, the store was merely holding the payments on behalf of the buyers until the buyers actually agreed to purchase the goods. In this case, by contrast, *821 Royal and Cybermech had a completed agreement that Royal would purchase the machines, and Cybermech had no obligation to refund the down payment in the event of Royal’s breach of that purchase agreement.