Henry Thomas HAILE, Jr., individually, and as Administrator of the estate of Agnes Lewis Haile, Deceased; Melvin Thomas Haile, a minor, suing by next friend and father, Henry Thomas Haile, Jr.; Carolyn Darlene Haile, a minor, suing by next friend and father, Henry Thomas Haile, Jr.; Ora Ellen Smith; Mrs. Gertrude L. Haile; and Henry Thomas Haile, Plaintiffs,

v.

Civ. A. No. 1544.

United States District Court
W. D. North Carolina,
Asheville Division.

Jan. 25, 1957.

See, also 148 F.Supp. 602.

Uzzell & Du Mont, Asheville, N. C., Folts, Brammer, Bishop & Thomas, Chattanooga, Tenn., O. L. Anderson, Murphy, N. C., for plaintiff.

Frank M. Parker, George H. Ward, Asheville, N. C., for defendants.

WARLICK, District Judge.

This cause, coming on to be heard before the undersigned United States District Judge upon the motion of the defendant, the Eastern Band of Cherokee Indians, to dismiss this action as to said

defendant, and being heard, the Court, after hearing argument of Counsel for the plaintiffs and the said defendant, and after considering the Complaint of the plaintiffs, the motion of the defendant, and the Affidavits referred to in said motion, being the Affidavits of Glenn L. Emmons, United States Commissioner of Indian Affairs, the Affidavit of W. Barton Greenwood, Assistant Commissioner of the Bureau of Indian Affairs, and the Affidavit of D. Otis Beasley, Administrative Assistant Secretary of the Department of the Interior, makes the following findings of fact and conclusions of law:

### Findings of Fact

(1) That by this action the plaintiffs seek recovery of damages from the defendants for injuries to the plaintiffs resulting from the collapse on July 3, 1955, of a certain bridge across the Oconalufty River, located on the Qualla Boundary of the Eastern Band of Cherokee Indians in Swain County, North Carolina. The legal title to said Qualla Boundary upon which said bridge was located was on said date, and still is, vested in the United States in trust for the Eastern Band of Cherokee Indians by virtue of a deed of conveyance executed by the Eastern Band of Cherokee Indians to the United States, which deed bears date July 21, 1925, and was executed by the Indians and accepted by the United States under the provisions of Act of Congress passed on June 4, 1924, 43 Stat. 376, 25 U.S.C.A. § 331 note.

(2) That prior to 1835 the Cherokee Indian Tribe lived in large areas of what are now the States of Tennessee, North Carolina, South Carolina, Alabama and Georgia. By successive treaties beginning with the Treaty of Hopewell in 1785, 7 Stat. 18, and ending with the Treaty of New Echota in 1835, 7 Stat. 478, the possessory right of the Cherokee Tribe over lands in North Carolina was gradually extinguished and all such land was made subject to grant by North Carolina. By the Treaty of New Echota the Tribe agreed to remove from North Carolina westward beyond the Mississippi in consideration of a payment of money by the United States and a grant of land beyond the Mississippi. A large number of Cherokees were moved as a result of the Treaty of New Echota by the United States Government to new lands West of the Mississippi. However, a number of the North Carolina Cherokees were permitted to remain in North Carolina in accordance with Article 12 of the Treaty of New Echota and others hid in the mountains of Western North Carolina and were not moved. By treaty with the Cherokee Indians in 1846, 9 Stat. 871, the United States recognized certain rights in the Cherokees then residing East of the Mississippi River as follows:

> "Article X. It is expressly agreed that nothing in the foregoing treaty contained shall be so construed as in any manner to take away or abridge any rights or claims which the Cherokees now residing in States East of the Mississippi River had, or may have, under the Treaty of 1835 and the supplement thereto."

The Congress of the United States more specifically recognized the rights of the Cherokees residing in North Carolina by Act of July 29, 1848, 9 Stat. 264, which made provision for taking a census of the North Carolina Cherokees and the payment of certain per capita payments. In accordance with this Act the first authentic role of the Eastern Cherokees residing in North Carolina subsequent to the Treaty of 1835 was made and the number entitled to enrollment found to be two thousand one hundred thirty three. Subsequently, by Act of July 27, 1868, 15 Stat. 228, the Congress of the United States directed the Secretary of the Interior to have a new role of the North Carolina Cherokees prepared and Section 3 of this Act provided as follows:

> "And be it further enacted, That hereafter the Secretary of the Interior shall cause the commissioner of Indian affairs to take the same supervisory charge of the Eastern

or North Carolina Cherokees as of other tribes of Indians."

Following enactment of this Act the Commissioner of Indian Affairs on November 7, 1868, by letter, advised the Cherokee Indians in North Carolina to organize themselves into a tribal capacity and elect their own officers, and the Eastern Cherokees shortly thereafter on December 9, 1868, at Cheoa, North Carolina, set forth a declaration establishing a simple form of tribal government. Subsequently and on October 13, 1875, at Cheoa Council Ground, the Eastern Band of Cherokee Indians approved a constitution known as the Welch Constitution, which provided for a Tribal Council and the number and qualifications of the members of the Council, a Principal Chief, a Vice Chief, other tribal officials, and the composition of the executive council, and specified that the annual council should be held on the first Monday in October. The Welch Constitution was in operation until the State of North Carolina passed Chapter 211 of the Private Laws of 1889 entitled "An act incorporating the Eastern Band of Cherokee Indians, and for other purposes." This Act was subsequently amended by Chapter 166 of the Private Laws of 1895, Chapter 207 of the Private Laws of 1897, Chapter 128 of the Private Laws of 1931 and Chapter 39 of the Private Laws of 1933. The Eastern Band of Cherokee Indians has, as provided in the State Charter, elected a Principal Chief, a Vice Chief and a Tribal Council and these officials have directed the business and affairs of the Eastern Band of Cherokee Indians in accordance with tribal ordinances and resolutions adopted by the Tribal Council and approved by the United States Indian Office. By election held on December 20, 1934, the Eastern Band of Cherokee Indians voted by a vote of 700 affirmative votes to 101 negative votes to accept the provisions of the Indian Reorganization Act of June 18, 1934, 48 Stat. 984, 25 U.S.C.A. § 461 et seq. On August 28, 1935, the Eastern Band of Cherokee Indians voted 381 for and 484

against accepting a constitution and by-laws in accordance with Section 16 of that Act.

(3) That subsequent to the Act of July 27, 1868, 15 Stat. 228, the Congress of the United States has enacted many other Statutes relating specifically to the Eastern Band of Cherokee Indians and recognizing their status as an Indian Tribe. As provided in Section 3 of that Act, the Secretary of the Interior has caused the Commissioner of Indian Affairs to take the same supervisory charge of the Eastern Band of Cherokee Indians as of other tribes of Indians. Continuously since the enactment of the Act of July 3, 1868, 15 Stat. 228, until the present time, the Government of the United States, by successive Acts of the Congress of the United States, and by repeated actions of its Executive Branch, acting particularly through the Bureau of Indian Affairs, has recognized the Eastern Band of Cherokee Indians as an Indian Tribe in all respects exactly as other Indian Tribes. Consistently and continuously since that date the legislative and executive branches of the Federal Government have dealt with and exercised supervision over the Eastern Band of Cherokee Indians in the same manner and to the same extent as over other Indian Tribes. The United States Government holds title to their lands and holds their funds in its treasury as trustee for these Indians. The United States Government maintains an Indian Agency at Cherokee, North Carolina, with a Superintendent in charge thereof under the Bureau of Indian Affairs. The Congress has appropriated substantial Federal funds to be available each year to the Cherokee Indian Agency to pay the costs of administration, education of the Indians, forestry, soil conservation, construction and maintenance of roads and buildings and other purposes for the welfare of these Indians. These various programs for the fiscal year 1956 will cost approximately $650,000 in Federal funds. Through the Cherokee Indian Agency the United States Bureau of Indian Affairs has dealt with the

Tribal Authorities of the Eastern Band of Cherokee Indians and has exercised supervisory control over their affairs in such matters as the management and conservation of their resources, the appointment of tribal attorneys, the safeguarding of Indian lands, the granting of trader's licenses, the making of tribal membership roles, and other matters affecting the welfare of these Indians. Expenditures from the tribal funds of these Indians which are held in the United States Treasury in trust for their benefit are made only after the Tribal Council has adopted a budget for this purpose, which budget has been approved by the Superintendent of the Cherokee Indian Agency and the Bureau of Indian Affairs, submitted to the Federal Bureau of the Budget, and finally authorized by Act of Congress as part of the general budget of the President of the United States for operation of the Federal Government. By these and many other actions both the Congress of the United States and the Executive Branch of the Federal Government have over a long period of years and continuing to the present time dealt with and recognized the Eastern Band of Cherokee Indians as an Indian Tribe within the meaning of the Constitution and laws of the United States.

(4) That the Congress of the United States has not passed any Act or otherwise taken any action giving its consent that this action may be brought against the Eastern Band of Cherokee Indians.

## Conclusions of Law

■■ (1) That the political departments of the Federal Government recognize the defendant, the Eastern Band of Cherokee Indians, as constituting an Indian Tribe, and it is a rule of the Courts, in matters of this kind, to follow the action of the Congress and the Executive Departments whose duty it is to determine such affairs. Applying this principle, it has now been conclusively established by a long line of decisions of the Circuit Court of Appeals that the defendant, the Eastern Band of Cherokee Indians, is an Indian Tribe within the meaning of the Federal Constitution and the Laws of the United States. United States v. Boyd, 4 Cir., 1897, 83 F. 547; United States v. Wright, 4 Cir., 1931, 53 F.2d 300, 301; United States v. Colvard, 4 Cir., 1937, 89 F.2d 312; United States v. 7,405.3 Acres of Land in Macon, Clay, and Swain Counties, North Carolina, 4 Cir., 1938, 97 F.2d 417; Blair v. McAlhaney, 4 Cir., 1941, 123 F. 2d 142; United States v. Parton, 4 Cir., 1943, 132 F.2d 886.

■ (2) That Chapter 211 of the Private Laws of North Carolina of 1889 entitled "An act incorporating the Eastern Band of Cherokee Indians, and for other purposes," as subsequently amended by other Acts of the General Assembly of North Carolina, is operative only in so far as it does not conflict with the rights conferred upon the Eastern Band of Cherokee Indians by the Constitution and Laws of the United States and only in so far as it does not interfere with the supervisory control which the Federal Government exercises over this Indian Tribe. Since the Federal Government has plenary power and control over this Indian Tribe, the State of North Carolina is without power by Act of its Legislature to authorize suit to be brought against the defendant, the Eastern Band of Cherokee Indians, or in any other manner to interfere with Federal control over its affairs. United States v. Boyd, 4 Cir., 1897, 83 F. 547; United States v. Colvard, 4 Cir., 1931, 89 F.2d 312.

■ (3) That the Congress of the United States can alone authorize a suit to be brought against an Indian Tribe and that the defendant, the Eastern Band of Cherokee Indians, is exempt from suit without such congressional authorization. As was said by the Supreme Court of the United States in the case of United States v. United States Fidelity & Guaranty Co., 1940, 309 U.S. 506, 60 S.Ct. 653, 656, 84 L.Ed. 894:

"The public policy which exempted the dependent as well as the domi-

nant sovereignties from suit without consent continues this immunity even after dissolution of the tribal government. These Indian Nations are exempt from suit without Congressional authorization. It is as though the immunity which was theirs as sovereigns passed to the United States for their benefit, as their tribal properties did."

See also Thebo v. Choctaw Tribe of Indians, 8 Cir., 1895, 66 F. 372, and Rollins v. Eastern Band of Cherokee Indians, 1882, 87 N.C. 229.

(4) That since Congress has not given its consent that the Eastern Band of Cherokee Indians may be sued in this action, this action must be dismissed as to such defendant.

It is now, therefore, ordered and adjudged that this action be and the same is hereby dismissed as to the defendant, the Eastern Band of Cherokee Indians.