ALLAN MILES COMPANIES, INC., ALLAN D. MILES AND WANDA M. MILES, AND BEN B. PROPST CONTRACTOR, INC. v. NORTH CAROLINA DE-PARTMENT OF TRANSPORTATION

No. 8319SC719

(Filed 1 May 1984)

**Highways and Cartways § 9.1; State § 4.3— highway rest areas—easement and extension of water and sewer lines—highway construction contract—submission of claim to State Highway Administrator**

An agreement whereby plaintiffs would convey to defendant Department of Transportation an easement for telephone, water and sewer lines across their property to two rest areas on I-85, plaintiffs would extend water and sewer lines across a portion of their property, and defendant would bear one-half of the cost of the water line extension and all of the cost of the sewer line extension *is held* a contract for the construction of the highway rest area buildings which is deemed a contract for highway construction pursuant to G.S. 136-28.1(d). Therefore, plaintiffs were required by G.S. 136-29(d) to submit their claim to the State Highway Administrator prior to bringing an action against the Department of Transportation for breach of the agreement.

APPEAL by plaintiff from *Freeman, Judge.* Judgment entered 11 April 1983 in Superior Court, CABARRUS County. Heard in the Court of Appeals 12 April 1984.

This case involves an alleged breach of contract. The action was started with the filing of a complaint by Allan Miles Companies, Inc. against the defendant. The complaint was amended to add plaintiffs Allan D. Miles and Wanda M. Miles. Defendant filed a motion to dismiss pursuant to Rule 12(b), which was denied. The defendant filed an answer alleging (1) the State had not waived its sovereign immunity against being sued; (2) a general denial; (3) failure to show by the pleadings a valid contract; and (4) a void contract in that plaintiffs have not alleged the contract was let

pursuant to the competitive bidding requirements set out in G.S. 136-28.1, and has not submitted his claim to the State Highway Administrator prior to bringing suit as required by G.S. 136-29. Thereafter defendant filed a counterclaim alleging unfair trade practices under G.S. 75-1.1 and seeking treble damages against the Miles Companies, Inc. and Allan D. Miles and wife. Answer to the counterclaim denied the allegation set out therein. Ben B. Propst Contractor, Inc. was allowed to intervene as a party plaintiff. Defendant filed a motion to dismiss and motion for summary judgment. The motion for summary judgment was allowed. All plaintiffs appealed.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Thomas H. Davis, Jr. for North Carolina Department of Transportation, defendant appellee.*

*Tom M. Grady and William F. Rogers, Jr. for Allan Miles Companies, Inc., Allan D. Miles and Wanda M. Miles, plaintiff appellants.*

*K. Michael Koontz and William F. Rogers, Jr. for Ben B. Propst Contractor, Inc., plaintiff appellant.*

HILL, Judge.

The sole question presented on appeal is whether the trial court erred in granting summary judgment for defendant. Resolution of this issue involves determination of (1) whether the parties' contractual dispute created a genuine issue of material fact, and (2) whether plaintiffs' claim was barred by statute and operation of law. Because it clearly appears G.S. 136-29 operates to bar plaintiffs' claim, we conclude defendant was entitled to summary judgment as a matter of law.

(1) *The contract.* Plaintiffs Allan D. Miles and his wife, Wanda M. Miles, are the record owners of a tract of land located adjacent to a pair of rest areas on I-85 in Cabarrus County and owned by the Department of Transportation. The two of them are president and secretary respectively of the corporate plaintiff Allan Miles Companies, Inc. Plaintiff Ben B. Propst Contractor, Inc. is a private contracting firm. Ernest D. Ransdell is the area utility agent for the North Carolina Department of Transportation.

Ransdell and Allan D. Miles negotiated a proposed agreement whereby Allan D. Miles and wife, Wanda M. Miles, would convey to the defendant Department of Transportation a permanent easement for telephone, water, and sewer lines across their property to the I-85 rest areas. A letter from Ransdell to Allan Miles dated 30 July 1980 provided substantially as follows: Plaintiff Miles Companies would extend an eight inch water main from an existing main on one of the properties of Allan D. Miles and wife to a designated point in Bridlewood Place at an estimated cost to plaintiff of $57,490.00. Defendant would bear one-half of the cost. From that point defendant was to procure construction and installation of a six inch water main across the property of Allan D. Miles and wife to defendant's property at an estimated cost of $7,608.00.

Plaintiff Miles Companies would extend the line from an existing sewer line in Overlook Subdivision owned by Allan D. Miles and wife to a point in Bridlewood Place at an estimated cost to plaintiff Miles Companies of $55,610.00. Defendant would bear all the costs of this line. From that point the defendant would extend at its own expense the sewer line along Bridlewood Place and plaintiff's property at an estimated cost of $8,558.00. The final paragraph of the letter stated:

> Please submit the estimate and plans for the work indicated above, at your earliest convenience, and we will proceed with preparing the necessary reimbursement agreement. If you should have questions or need additional information concerning the above, please let me know.

Another letter dated 31 July 1980 was sent to Allan Miles as president of Allan Miles Companies, Inc., from the State utility agent amending the location of the sewer line. Again the letter stated, "I will proceed with preparing the reimbursement as soon as Mr. Billups submits your estimate and plans." Another letter was addressed to Allan Miles from the State utility agent dated 4 August 1980 amending the description of the location of the property lines.

On 8 August 1980, J. H. Craver, president of Ben B. Propst Contractor, Inc., submitted a proposal to install the eight inch and six inch water lines, and to extend the sewer line. Thereafter on

24 November 1980 the State utility agent wrote Allan Miles as follows:

SUBJECT: Water and Sewer Service to Proposed Rest Areas

Dear Mr. Miles:

This letter will confirm our telephone conversation of November 14, 1980, wherein the following items were discussed:

1. It was agreed that the Division of Highways will abandon plans, both for now and the future, to tie water and sewer service lines from our proposed rest area sites into existing water and sewer lines in your Partridge Bluff and Overbrook Subdivisions.

2. The Division of Highways will reimburse you for the cost of making certain water and sewer line adjustments solely for the benefit of the Division. These adjustments, which were shown as numbered paragraphs two (2) and four (4) in Mr. J. H. Craver's letter of August 8, 1980, to you, were estimated to cost $16,971.00. A copy of Mr. Craver's letter is attached for your information.

3. You agreed to submit to this office an itemized bill covering the costs mentioned in item two (2) above. Please detail the bill to show a breakdown of the amount and type of the various items of material used and any other cost involved, such as rock excavation, etc. I advised you that the bill would be audited prior to payment and you agreed to provide our auditors documentation of the costs and allow them to examine your records when requested.

4. You agreed to nullify any agreements that you felt you had with the Division of Highways and not pursue further any claims against the Division associated with any such agreements. This includes, but is not limited to, the items included in my letters of July 30 and 31, 1980, to you. A copy of each of the letters is attached for your use.

If you are in agreement with the foregoing, please advise. Also, please submit the bill for the actual cost of the work indicated in item two (2) above.

On 17 December 1980, Allan Miles replied to the State utility agent as follows:

> In reply to your letter dated November 24, 1980, I am not in agreement with your proposal and request payment according to your letter of intent dated July 30th, and amended July 31, 1980. Easements, estimates and plans as you requested in your July 30th letter may be obtained from Mr. Johnny Graham, P. E. Staff Engineer, Security Real Estate, 476 Church Street N., Concord, North Carolina 28025.

The State utility agent replied by letter dated 13 January 1981 stating:

> In our last meeting of September 23, 1980, you advanced the proposal that the Division of Highways not tie water and sewer service lines from the proposed rest areas into existing lines within your Partridge Bluff and Overbrook Subdivisions. In addition, you proposed that the rest areas be served from some point that would not involve your property. Accordingly, we abandoned plans to tie into water and sewer lines located on your property and have made plans to receive water and sewer service from another direction. This is in keeping with both the meeting mentioned above and our telephone conversation of November 14, 1980, with you.

Thereafter, the defendant offered to submit a check as full and complete settlement of all expenses incurred by Miles for work done solely for the Division of Highways in accordance with an itemized statement attached to Miles' letter dated 17 December 1980 totalling $16,971.00. Miles refused to accept defendant's offer.

In the meantime plaintiff Miles Companies had installed the eight inch water main at the cost of $57,490.00 and the sewer line for a cost of $55,610.00, and plaintiff Propst had extended the six inch water main at a cost of $16,166.00. Defendant refused to reimburse plaintiff Miles Companies for one-half the cost of installing the eight inch water main and the total cost of the sewer line. Defendant also refused to pay plaintiff Propst Contractor, Inc. for the work performed by it.

No competitive bidding was held for any of the work described herein. Nor were any claims filed with Billy Rose, State

highway administrator, prior to initiation of the action in superior court.

All plaintiffs have alleged the existence of contracts with the State Department of Transportation, and defendant has denied the existence of such contracts. Such constitutes a genuine issue of fact. However, when the question of fact presented is immaterial, entry of summary judgment is not prevented. *Keith v. Reddick, Inc.*, 15 N.C. App. 94, 189 S.E. 2d 775 (1972). In the case under review, the issue of fact as to the parties' contract becomes immaterial because where it clearly appears on the face of the record that a plaintiff's claim is barred by statute or operation of law, the moving party is entitled to summary judgment as a matter of law. *Jarrell v. Sampsonite Corp.*, 12 N.C. App. 673, 184 S.E. 2d 376 (1971), *cert. denied*, 280 N.C. 180, 185 S.E. 2d 704 (1972).

(2) *G.S. 136-29.* Defendant contends summary judgment was proper, asserting that G.S. 136-29 is a condition precedent to the institution of this action by all plaintiffs. Defendant argues the trial court lacked subject matter jurisdiction in this case because of plaintiff's failure to exhaust their administrative remedies. We agree.

The North Carolina Department of Transportation is an agency of the State of North Carolina, and as such is subject to sovereign immunity, when such immunity is not waived. *Orange County v. Heath*, 14 N.C. App. 44, 187 S.E. 2d 345, *aff'd* 282 N.C. 292, 192 S.E. 2d 308 (1972). The North Carolina Legislature has waived sovereign immunity with respect to disputes between contractors and the North Carolina Department of Transportation by the enactment of G.S. 136-29 entitled, "Adjustment of Claims." This statute reads in part as follows:

> (a) Upon the completion of any contract for the construction of any State highway awarded by the Department of Transportation to any contractor, if the contractor fails to receive such settlement as he claims to be entitled to under his contract, he may, within 60 days from the time of receiving his final estimate, submit to the State Highway Administrator a written and verified claim for such amount as he deems himself entitled to under the said contract setting forth the facts upon which said claim is based. . . .

(b) As to such portion of the claim as is denied by the State Highway Administrator, the contractor may, within six (6) months from receipt of said decision, institute a civil action for such sum as he claims to be entitled to under said contract by the filing of a verified complaint and issuance of summons in the Superior Court of Wake County or in the superior court of any county wherein the work under said contract was performed. . . .

(c) All issues of law and fact and every other issue shall be tried by the judge, without a jury. . . .

(d) The submission of the claim to the State Highway Administrator within the time and as set out in subsection (a) of this section and the filing of an action in the superior court within the time as set out in subsection (b) of this section shall be a condition precedent to bringing such an action under this section and shall not be a statute of limitations.

(e) The provisions of this section shall be deemed to enter into and form a part of every contract entered into between the Department of Transportation and any contractor, and no provision in said contracts shall be valid that is in conflict herewith.

Plaintiffs contend that the contracts between the parties are not contracts for the construction of a state highway, and G.S. 136-29 has no application to the facts of this case. In support of their position, plaintiffs Allan D. Miles and Wanda M. Miles and Miles Companies point out that defendant bargained to acquire two thirty foot permanent rights of way without cost and to "reimburse" plaintiffs for their costs of installing water and sewer lines in said rights of way over their property toward the proposed highway rest areas. Plaintiffs contend this constituted, in effect, a sale of easements. Plaintiff Ben B. Propst contends his installation of water and sewer lines does not constitute "construction and repair of the highway rest area buildings and facilities" covered by the statute. We disagree with plaintiffs' contentions and affirm the decision of the trial judge.

The sole need for the water and sewer lines is to service the two rest areas adjoining I-85. Rest areas are an accepted part of the modern highway system. They not only provide comfort for

the traveller, but also promote highway safety by serving the physical needs of the traveller. "The construction and repair of the highway rest area buildings . . . shall be deemed highway construction or repair. . . ." G.S. 136-28.1(d). In order to provide permanent access to the Concord utility system, plaintiff Miles agreed to give the right of way for the water and sewer lines. The water and sewer lines *per se* as installed became a part of the rest stop facility which they served. The *raison d'etre* for the lines was to provide this service as a part of the rest stop facility, which was a part of the highway system.

We conclude the contracts fall within the provisions of G.S. 136-29. The language of the statute clearly sets out that the presentation of a "claim to the State Highway Administrator . . . shall be a condition precedent to bringing such an action under this section." G.S. 136-29(d); *In re Huyck Corp. v. Mangum, Inc.,* 309 N.C. 788, 309 S.E. 2d 183 (1983). Plaintiffs have failed to pursue their administrative remedies and have no standing in court. *Presnell v. Pell,* 298 N.C. 715, 260 S.E. 2d 611 (1979).

The decision of the trial judge is

Affirmed.

Judges WEBB and WHICHARD concur.