WELCH CONTRACTING, INC., PLAINTIFF-APPELLANT v. NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, AS AN AGENCY OF THE STATE OF NORTH CAROLINA, AND THE EASTERN BAND OF CHEROKEE INDIANS, DEFENDANTS-APPELLEES

No. COA05-100

(Filed 20 December 2005)

## 1. Appeal and Error— appellate rules violations—notice

Although plaintiff's brief in a breach of contract case violates N.C. R. App. P. 10 and 28 since the assignment of error in the record on appeal does not correspond to the question presented in plaintiff's brief, defendants had sufficient notice of the basis upon which the Court of Appeals might rule because: (1) plaintiff made only one assignment of error, and that assignment of error referenced the order of the trial court; (2) under these circumstances, defendants reasonably should have known that plaintiff's assignment of error contained a clerical error incorrectly citing summary judgment as the ground for dismissal; and (3) defendants were not prejudiced by plaintiff's error.

## 2. Immunity— sovereign immunity—construction agreement—statutory bidding procedures—failure to provide supervision and control

The trial court did not err in a breach of contract case by concluding that it lacked subject matter jurisdiction over the case, and as a result, by granting defendant North Carolina Department of Transportation's (NCDOT) motion to dismiss under N.C.G.S. § 1A-1, Rules 12(b)(1) and (b)(6) for failure to state a claim upon which relief could be granted even though plaintiff contends NCDOT waived its sovereign immunity as to plaintiff when it entered into a construction agreement with defendant Eastern Band of Cherokee Indians (EBCI), because: (1) when a state agency such as NCDOT enters into an agreement with a devel-

oper who then alone enters into a contract with a contractor, the state agency waives its sovereign immunity only to the original party to their agreement and not to others; (2) there was no contract between plaintiff and NCDOT, and thus, NCDOT did not waive its immunity as to plaintiff when it entered into a contract with EBCI; (3) the contract at issue between NCDOT and EBCI was a construction agreement under N.C.G.S. § 136-18(12) and not N.C.G.S. § 136-28.1, and even assuming arguendo that NCDOT failed to follow bid-letting procedures, plaintiff did not present statute or case law to support the contention that the contract bidding statute is an express waiver by the North Carolina General Assembly of NCDOT's sovereign immunity; (4) although plaintiff contends NCDOT failed to provide supervision and control over EBCI which led to a breach of contract between EBCI and plaintiff, there was no language in defendants' construction agreement that holds NCDOT responsible for the supervision and control of EBCI in its dealings with third-party contractors; and (5) plaintiff is not a party to the contract that plaintiff claims induced plaintiff to expend funds to its detriment, and there is no existence of a quasi-contractual relationship between plaintiff and NCDOT based upon the express contract between NCDOT and EBCI.

**3. Indians— tribal sovereign immunity—subject matter jurisdiction of courts of North Carolina**

The trial court did not err in a breach of contract case by concluding that it lacked subject matter jurisdiction over the case, and as a result, by granting defendant Eastern Band of Cherokee Indians' (EBCI) motion to dismiss under N.C.G.S. § 1A-1, Rules 12(b)(1) and (b)(6) for failure to state a claim upon which relief could be granted even though plaintiff contends EBCI waived its tribal sovereign immunity, because: (1) contrary to plaintiff's assertion, EBCI's corporate charter in 1889 does not waive EBCI's tribal sovereign immunity; (2) a waiver of tribal immunity cannot be implied from entering into a contract, but rather must be unequivocally expressed; and (3) Congress has not abrogated the immunity of EBCI, nor has EBCI waived it.

Appeal by plaintiff from order dated 9 September 2004 by Judge James U. Downs in Superior Court, Swain County. Heard in the Court of Appeals 21 September 2005.

WELCH CONTR'G, INC. v. N.C. DEP'T OF TRANSP.

[175 N.C. App. 45 (2005)]

*McLean Law Firm, P.A., by Russell L. McLean, III for plaintiff-appellant.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Joseph E. Herrin, for defendant-appellee North Carolina Department of Transportation.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Elizabeth A. Martineau and Taurus E. Becton; and David L. Nash, for defendant-appellee Eastern Band of Cherokee Indians.*

McGEE, Judge.

The North Carolina Department of Transportation (NCDOT) and the Eastern Band of Cherokee Indians (the EBCI) (collectively, defendants) entered into a construction agreement on 11 June 1999 to make improvements to U.S. Highway 19 from Cherokee, North Carolina, to Maggie Valley, North Carolina (Highway 19 project). The Highway 19 project was designated as a "high priority project" by the United States Congress, under 23 U.S.C. § 117, commonly known as the "High Priority Projects Program." Designated as High Priority Project number 1303 under the federal statute, the Highway 19 project was to "upgrade and improve U.S. 19 from Maggie Valley to Cherokee." 23 U.S.C. § 117. Congress allocated fifteen million dollars for the project, which constituted eighty percent of the total cost of construction. Under the terms of defendants' construction agreement, the EBCI was responsible for the remaining twenty percent, or three million dollars, of the cost. The EBCI was also responsible for administering the construction of the Highway 19 project and was authorized to hire contractors for the construction.

Welch Contracting, Inc. (plaintiff) filed a complaint against defendants on 16 February 2004, alleging plaintiff had been hired by EBCI as a sub-contractor pursuant to defendants' construction agreement. Plaintiff alleged wrongdoing by defendants under two contracts: (1) defendants' construction agreement and (2) an alleged contract between plaintiff and the EBCI. Plaintiff, a minority-owned North Carolina corporation, claimed it entered into a thirty-month contract with the EBCI, through an authorized agent, to perform work on the Highway 19 project. Plaintiff did not include a copy of said contract in either its complaint or the record on appeal. Plaintiff alleged in its complaint, *inter alia*, that NCDOT failed to supervise the EBCI as required by defendants' construction agreement, and that NCDOT failed to adhere to federal and state minority business poli-

cies. Plaintiff alleged that the EBCI breached its contract with plaintiff by forcing plaintiff to change the scope and nature of its work, and later by terminating plaintiff without just cause, right or provocation. Plaintiff sought recovery from NCDOT for incidental and consequential damages incurred as a result of NCDOT's actions under defendants' construction agreement. Plaintiff sought recovery from the EBCI for breach of the alleged contract between plaintiff and the EBCI.

Defendants filed a motion to dismiss pursuant to North Carolina Rules of Civil Procedure 12(b)(1), (b)(2), (b)(6), and (h)(3). N.C. Gen. Stat. § 1A-1, Rule 12 (2003). Thereafter, plaintiff filed an amended complaint, which contained the additional allegation that NCDOT failed to follow state bidding requirements. NCDOT amended its motion to dismiss to include plaintiff's amended complaint, as well as the original complaint.

Defendants' motion to dismiss was heard by the trial court on 20 May 2004. The hearing was heard out-of-county and out-of- session by the consent of the parties. The trial court allowed defendants' motion to dismiss under N.C.R. Civ. P. 12(b)(1) and (b)(6). The trial court held that it lacked subject matter jurisdiction over the case, and, as a result, the complaint failed to state a claim upon which relief could be granted. Plaintiff appeals.

[1] Plaintiff's only assignment of error is that the trial court erred as a matter of law "in granting summary judgment" for defendants. However, the order entered by the trial court did not, in fact, grant summary judgment. Rather, the order granted a motion to dismiss under Rules 12(b)(1) and (b)(6) of the North Carolina Rules of Civil Procedure, on the grounds that the trial court lacked subject matter jurisdiction and that consequently the complaint failed to state a claim upon which relief could be granted. Plaintiff's assignment of error refers to an incorrect ground for dismissal, summary judgment. However, plaintiff's brief contains arguments on the correct ground, lack of subject matter jurisdiction.

Under Rule 10 of the North Carolina Rules of Appellate Procedure:

(a) . . . [T]he scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal in accordance with this Rule 10.

(c) (1) . . . A listing of the assignments of error upon which an appeal is predicated shall be stated at the conclusion of the record on appeal[.] . . . Each assignment of error shall, so far as practicable, be confined to a single issue of law; and shall state plainly, concisely and without argumentation the legal basis upon which error is assigned.

N.C.R. App. P. 10(a) and (c)(1).

Under Rule 28 of the North Carolina Rules of Appellate Procedure,

(b) (6) . . . Immediately following each question [presented] shall be a reference to the assignments of error pertinent to the question, identified by their numbers and by the pages at which they appear in the printed record on appeal. Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned.

N.C.R. App. P. 28(b)(6).

Plaintiff's brief is in violation of Rules 10 and 28 in that the assignment of error in the record on appeal does not correspond to the question presented in plaintiff's brief. Our Supreme Court has held that "[t]he North Carolina Rules of Appellate Procedure are mandatory and 'failure to follow these rules will subject an appeal to dismissal.' " *Viar v. North Carolina Dept. of Transp.*, 359 N.C. 400, 401, 610 S.E.2d 360, 360 (2005) (quoting *Steingress v. Steingress*, 350 N.C. 64, 65, 511 S.E.2d 298, 299 (1999)). The rationale underlying the *Viar* decision, however, was that "otherwise, the Rules become meaningless, and an appellee is left without notice of the basis upon which an appellate court might rule." *Id.* at 402, 610 S.E.2d at 361. Here, clearly, defendants had sufficient notice of the basis upon which our Court might rule. Plaintiff made only one assignment of error, and that assignment of error referenced the order of the trial court. The trial court's order stated only one ground from which plaintiff could appeal, that being the lack of subject matter jurisdiction under Rule 12. The order read in pertinent part:

This Matter having come on to be heard before the undersigned Senior Resident Superior Court Judge . . . the Court finds and concludes that the Superior Court of Swain County, North Carolina lacks subject matter jurisdiction of this case and consequently

holds that the complaint fails to state a claim upon which relief can be granted[.]

> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the motions of both defendants to dismiss the plaintiff's action on the grounds that the Superior Court of Swain County lacks subject matter jurisdiction of this case, and as a result thereof the complaint fails to state a claim upon which relief can be granted . . . and the same are hereby allowed.

As defendants concede, there was no mention of summary judgment in the order. The trial court ruled solely on the motion made under N.C.R. Civ. P. 12. Under these circumstances, defendants reasonably should have known that plaintiff's assignment of error contained a clerical error, incorrectly citing summary judgment as the ground for dismissal. As defendants were not prejudiced by plaintiff's error, we review the merits of plaintiff's argument. In so doing, we do not address an issue "not raised or argued by plaintiff," nor do we "create an appeal for an appellant." *Viar*, 359 N.C. at 402, 610 S.E.2d at 361. Upon review, we affirm the order of the trial court.

Rule 12(b)(1) of the Rules of Civil Procedure allows for dismissal based upon a trial court's lack of jurisdiction over the subject matter of the claim. N.C. Gen. Stat. § 1A-1, Rule 12. Our Court has held that the defense of sovereign immunity is a Rule 12(b)(1) jurisdiction defense. *Battle Ridge Cos. v. N.C. Dep't of Transp.*, 161 N.C. App. 156, 587 S.E.2d 426 (2003). "[T]he standard of review on a motion to dismiss under Rule 12(b)(1) for lack of jurisdiction is *de novo.*" *Hatcher v. Harrah's N.C. Casino Co., LLC*, 169 N.C. App. 151, 155, 610 S.E.2d 210, 212 (2005) (internal citations omitted). The standard of review on a motion to dismiss under Rule 12(b)(6) is "whether, if all the plaintiff's allegations are taken as true, the plaintiff is entitled to recover under some legal theory." *Toomer v. Garrett*, 155 N.C. App. 462, 468, 574 S.E.2d 76, 83 (2002).

Plaintiff argues that dismissal was erroneous as to both NCDOT and the EBCI because both defendants waived their sovereign immunity.

I.

[2] Plaintiff first argues that dismissal as to NCDOT was improper because NCDOT waived its sovereign immunity when it entered into a construction agreement with the EBCI.

The law of state sovereign immunity is quite clear in this State:

> It is an established principle of jurisprudence, resting on grounds of sound public policy, that a state may not be sued in its own courts or elsewhere unless it has consented by statute to be sued or has otherwise waived its immunity from suit. *Smith v. Hefner*, 235 N.C. 1, 6, 68 S.E.2d 783, 787 (1952). By application of this principle, a subordinate division of the state or an agency exercising statutory governmental functions may be sued only when and as authorized by statute. *Id.*

*Battle Ridge*, 161 N.C. App. at 157, 587 S.E.2d at 427. Sovereign immunity is waived whenever the State, "through its authorized officers and agencies, enters into a valid contract[] [because] the State implicitly consents to be sued for damages on the contract in the event it breaches the contract." *Smith v. State*, 289 N.C. 303, 320, 222 S.E.2d 412, 423-24 (1976). Even then, however, "recovery, if any, must be within the terms and framework of the provisions of the contract . . . and not otherwise." *Teer Co. v. Highway Commission*, 265 N.C. 1, 16, 143 S.E.2d 247, 258 (1965).

Our Court decided this issue in a case with facts similar to our present case, *Rifenburg Constr., Inc. v. Brier Creek Assocs. Ltd. P'ship*, 160 N.C. App. 626, 586 S.E.2d 812 (2003), *aff'd per curiam*, 358 N.C. 218, 593 S.E.2d 585 (2004), in which a contractor sought relief under a contract between NCDOT and a third party. In *Rifenburg*, NCDOT and a private developer entered into a construction agreement under a private/public development arrangement as allowed by N.C. Gen. Stat. § 136-28.6. *Id.* at 628, 586 S.E.2d at 814. The developer was responsible for the day-to-day management and progress of the project, just as the EBCI was responsible for the Highway 19 project in the present case. *Id.* at 632, 586 S.E.2d at 817. The developer in *Rifenburg* entered into a separate agreement with a contractor, who later filed suit against NCDOT. Upon review, our Court held that "[w]hen a state agency, such as NCDOT, enters into an agreement with a developer, who then alone enters into a contract with a contractor, the state agency waives its sovereign immunity only to the original party to their agreement *not to others*." *Id.* at 631, 586 S.E.2d at 816 (emphasis added). In the present case, there was no contract between plaintiff and NCDOT. Accordingly, NCDOT did not waive its immunity as to plaintiff when it entered into a contract with the EBCI. We therefore find plaintiff's argument to be without merit.

Plaintiff also argues that NCDOT waived its sovereign immunity by failing to comply with statutory bidding procedures when it entered into a contract with the EBCI. N.C. Gen. Stat. § 136-28.1 (2003) sets forth NCDOT's contract-letting procedures:

> (a) All contracts over one million two hundred thousand dollars ($1,200,000) that the Department of Transportation may let for construction or repair necessary to carry out the provisions of this Chapter shall be let to a responsible bidder after public advertising under rules and regulations to be made and published by the Department of Transportation.

However, the contract at issue here between NCDOT and the EBCI was a construction agreement under N.C. Gen. Stat. § 136-18(12), not § 136-28.1. N.C. Gen. Stat. § 136-18(12) (2003) authorizes NCDOT to do all "things necessary to carry out fully the cooperation contemplated and provided for" by federal programs relating to transportation. Even assuming, *arguendo*, that NCDOT failed to follow bid-letting procedures, this failure would not necessarily result in a waiver of sovereign immunity. Sovereign immunity can be expressly waived by statute. *See, e.g., Allan Miles Cos. v. N.C. Dept. of Transportation*, 68 N.C. App. 136, 141-42, 314 S.E.2d 576, 579-80 (1984) (holding that N.C. Gen. Stat. § 136-29, then entitled "Adjustment of Claims," expressly waived sovereign immunity with respect to disputes between contractors and NCDOT). However, plaintiff presents no statute or case law to support the contention that the contract bidding statute is an express waiver by the North Carolina General Assembly of NCDOT's sovereign immunity. Accordingly, we find this argument lacks merit.

Plaintiff also contends that NCDOT failed to provide supervision and control over the EBCI, which led to a breach of contract between the EBCI and plaintiff. We find no language in defendants' construction agreement that holds NCDOT responsible for the supervision and control of the EBCI in its dealings with third-party contractors. In fact, paragraph seven of the agreement specifically provides: "(B) The construction, engineering and supervision will be furnished by the EBCI." Plaintiff also contends that NCDOT "specifically set out in [defendants' construction agreement] that [plaintiff] could become a contractor so long as it followed the terms of the agreement," thereby "authoriz[ing] and induc[ing]" plaintiff to expend funds to its detriment. Citing *Smith*, plaintiff argues that it would be unfair "to hold that a state may arbitrarily avoid its obligations under a contract after having induced the other side to change its position or expend time

or money[.]" *Smith*, 289 N.C. at 320, 222 S.E.2d at 423. In reviewing defendants' construction agreement, we find no language that specifically states that plaintiff could become a contractor. Paragraph seven of the agreement reads in pertinent part: "(A) If the EBCI elects to enter into a contract for the construction of any portion of said projects, the contractor shall comply with all specifications and policies of the [NCDOT] and the terms of this agreement." Moreover, plaintiff misapplies *Smith*. Unlike the facts of *Smith*, plaintiff in the present case is not a party to the contract that plaintiff claims induced plaintiff to expend funds to its detriment.

Plaintiff seems to imply the existence of a quasi-contractual relationship between plaintiff and NCDOT, based upon the express contract between NCDOT and the EBCI. However, our Supreme Court has stated:

> We will not imply a contract in law in derogation of sovereign immunity. . . . [W]e will not first imply a contract in law where none exists in fact, then use that implication to support the further implication that the State has intentionally waived its sovereign immunity and consented to be sued for damages for breach of the contract it never entered in fact. Only when the State has implicitly waived sovereign immunity by *expressly* entering into a *valid* contract through an agent of the State expressly authorized by law to enter into such contract may a plaintiff proceed with a claim against the State[.]

*Whitfield v. Gilchrist*, 348 N.C. 39, 42-43, 497 S.E.2d 412, 415 (1998) (citing *Smith*). As no contract was entered into between NCDOT and plaintiff, NCDOT did not waive its sovereign immunity as to plaintiff. Accordingly, the assignment of error as to NCDOT is overruled.

II.

[3] Plaintiff next argues that dismissal as to the EBCI was improper because the EBCI waived its tribal sovereign immunity. Plaintiff concedes that the EBCI is a federally recognized Indian tribe, and that the doctrine of tribal sovereign immunity for federally recognized tribes normally prevents state courts from obtaining jurisdiction over them. Plaintiff asks this Court to decide "the very narrow issue . . . [of] whether the [] EBCI has waived its sovereign immunity to allow this suit."

Tribal sovereign immunity is a matter of federal law. *Kiowa Tribe v. Manufacturing Tech.*, 523 U.S. 751, 755-60, 140 L. Ed. 2d 981,

986-88 (1998). The Fourth Circuit has explicitly held that the right to sue the EBCI is dependant upon the explicit permission of Congress and that the principles of federal preemption apply. *See Eastern Band of Cherokee Indians v. Lynch*, 632 F.2d 373 (4th Cir. 1980) (discussing *Haile v. Saunooke*, 246 F.2d 293 (4th Cir. 1957)). An Indian tribe such as the EBCI is subject to suit only where Congress has authorized the suit or the tribe has expressly and unequivocally waived its tribal sovereign immunity. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 L. Ed. 2d 106 (1978); *see also Oklahoma Tax Com: v. Potawatomi Tribe*, 498 U.S. 505, 112 L. Ed. 2d 1112 (1991).

Plaintiff argues that the EBCI expressly and unequivocally waived its tribal sovereign immunity when it incorporated under the laws of North Carolina in 1889. Plaintiff contends that pursuant to the corporate charter, the tribe consented to sue and be sued in North Carolina courts. However, federal courts have held that the EBCI's charter does not waive the EBCI's tribal sovereign immunity. The U.S. District Court for the Western District of North Carolina held that

> Chapter 211 of the Private Laws of North Carolina of 1889 entitled "An act incorporating the Eastern Band of Cherokee Indians, and for other purposes," as subsequently amended by other Acts of the General Assembly of North Carolina, is operative . . . only in so far as it does not interfere with the supervisory control which the Federal Government exercises over this Indian Tribe. Since the Federal Government has plenary power and control over this Indian Tribe, the State of North Carolina is without power by Act of its Legislature to authorize suit to be brought against [the EBCI], or in any other manner to interfere with Federal control over its affairs.

*Haile v. Saunooke*, 148 F. Supp. 604, 607 (W.D.N.C. 1947), *aff'd*, 246 F.2d 293 (4th Cir. 1957), *cert. denied, Haile v. Eastern Band of Cherokee Indians*, 355 U.S. 893, 2 L. Ed. 2d 191 (1957).

In *Haile*, the plaintiff sought to recover from the EBCI and from individual members of EBCI for personal injuries suffered in the collapse of a swinging bridge located on tribal land. *Id.* at 605. The district court dismissed the action as to the EBCI based upon sovereign immunity of the tribe. *Id.* at 608. The Fourth Circuit, in affirming, concluded:

> It is said that the right to sue the [EBCI] is given by the act of the Legislature of North Carolina incorporating the band; but it is

perfectly clear that an act of a state legislature cannot be allowed to interfere with the guardianship over these people which the United States has assumed, since Congress alone must determine the extent to which the immunities and protection afforded by tribal status are to be withdrawn.

*Haile*, 246 F.2d at 297-98. In light of this federal precedent, we hold that the charter granted to the EBCI by the State of North Carolina does not operate to waive the EBCI's tribal sovereign immunity.

Plaintiff relies on *Sasser v. Beck*, 40 N.C. App. 668, 253 S.E.2d 577 (1979) for the proposition that the EBCI is subject to the jurisdiction of North Carolina courts. However, *Sasser* is distinguishable on its facts. In *Sasser*, a non-Indian minor, through his guardian ad litem, brought a tort action against an individual member of the EBCI, not the EBCI as an entity. The plaintiff sought to recover for personal injuries he sustained in a motel swimming pool owned by the defendant. Our Court held that the superior court had civil jurisdiction over the tort action against the individual member of the EBCI. *Sasser* at 674, 253 S.E.2d at 581.

Plaintiff also argues that because the EBCI entered into the construction agreement with NCDOT off reservation territory, with authority to employ plaintiff off the reservation, North Carolina law places the EBCI in the position of a general contractor from whom plaintiff should be entitled to seek relief in state court for a breach of contract.

First, we note that the record does not contain a copy of any contract between plaintiff and the EBCI. Accordingly, the language of any such contract is beyond the scope of our review. *See* N.C.R. App. P. 9. Moreover, plaintiff presents no argument that the contract included any language whereby the EBCI unequivocally expressed a waiver of tribal sovereign immunity. A waiver of tribal sovereign immunity cannot be implied from entering into a contract; rather, it must be unequivocally expressed. *See, e.g., Oklahoma Tax Comm'n; Santa Clara Pueblo*. A waiver of tribal sovereign immunity is distinguishable from a waiver of state sovereign immunity, which may be implied from entering into a contract. *See Kiowa*, 523 U.S. at 755-56, 140 L. Ed. 2d at 986.

In *Kiowa*, the U.S. Supreme Court affirmed the rigid criteria that apply to a waiver of tribal sovereign immunity. The facts of *Kiowa* are that the tribe defaulted on an agreement to purchase stock from

EZELL v. GRACE HOSP., INC.

[175 N.C. App. 56 (2005)]

a private manufacturer. *Id.* at 754, 140 L. Ed. 2d at 984. The manufacturer obtained a summary judgment against the tribe in state court. On appeal, the Oklahoma Court of Civil Appeals held the tribe was subject to suit in state court, based upon the law of state sovereign immunity. *Id.* at 753, 140 L. Ed. 2d at 984. The U.S. Supreme Court reversed and rejected the state court's reliance on cases involving state sovereign immunity, holding that "[w]e have often noted . . . that the immunity possessed by Indian tribes is not coextensive with that of the States. . . . [T]ribal immunity is a matter of federal law and is not subject to diminution by the States." *Id.* at 755-56, 140 L. Ed. 2d at 986 (internal citations omitted). The Court concluded: "[W]e choose to defer to Congress. Tribes enjoy immunity from suits on contracts, whether those contracts involve governmental or commercial activities and whether they were made on or off a reservation. [Where] Congress has not abrogated this immunity, nor has petitioner waived it, [] the immunity governs[.]" *Id.* at 760, 140 L. Ed. 2d at 988.

In this case, Congress has not abrogated the immunity of the EBCI, nor has the EBCI waived its immunity. Accordingly, the EBCI enjoys tribal sovereign immunity from jurisdiction of the courts of North Carolina. Without jurisdiction over the EBCI, the trial court properly dismissed plaintiff's claim under Rules 12(b)(1) and (b)(6).

Affirmed.

Judges McCULLOUGH and JACKSON concur.