B. F. McMILLAN, CLERK OF THE SUPERIOR COURT OF ROBESON
COUNTY, NORTH CAROLINA v. ROBESON COUNTY; V. J. GRIFFIN;
D. D. McCOLL; JACK PAIT; GEORGE L. PATE; TRACY W. SAMP-
SON AND J. E. WATSON, AS THE BOARD OF COMMISSIONERS FOR
ROBESON COUNTY; AND T. WADE BRUTON, ATTORNEY GENERAL
FOR THE STATE OF NORTH CAROLINA.

(Filed 10 July 1964.)

**1. Clerks of Court § 12—**

The statutory authority for the clerk of the Superior Court to collect or
receive moneys for fines, penalties, judgment costs, etc., carries with it
the duty to pay the sums collected to the parties entitled thereto, G.S.
1-241, G.S. 2-3, which duty includes interest or earnings on the funds, and
while the allocation of earnings to the persons entitled to the funds may
present problems in accounting, that fact does not justify the deprivation
of the owners of their property and their share of the earnings.

**2. Constitutional Law § 23—**

The constitutional provision that no person shall be deprived of his prop-
erty except by the law of the land applies to interest or earnings on funds
in the same manner as it applies to principal. Constitution of North Caro-
lina, Art. I, § 17.

**3. Constitutional Law § 24—**

Notice and opportunity to be heard are required by both the Federal and
State Constitutions before a citizen may be deprived of his property.

**4. Same;    Declaratory Judgment Act § 2— Cause remanded for neces-
sary parties.**

In this action by a clerk of the Superior Court to determine whether he
should pay interest received from the investment of moneys from unclaim-
ed court costs, fees, and judgment payments etc., into the general fund of
the county in compliance with Ch. 881, S.L. 1955, as amended, *held*, judg-
ment may not be entered when the University of North Carolina is not
made a party for the purpose of determining what part of the interest
earned, if any, was *escheats* or was abandoned property, Constitution of
North Carolina, Art. IX, § 7, G.S. 116-23, or an opportunity for persons
representing the owners of the funds to challenge the right of the county
to take the earnings therefrom, and therefore the action is remanded for
joinder of necessary parties. G.S. 1-260.

APPEAL by plaintiff from *McKinnon, J.,* in Chambers in ROBESON on
April 24, 1964.

Plaintiff seeks a judgment determining the constitutionality of C.
881, S. L. 1955, as amended by C. 88, S. L. 1963. The parties waived a
jury trial. These facts appear from the pleadings or stipulations.

Annual audits, as authorized by G.S. 2-46, are made by certified
public accountants of the funds for which the Clerk of the Superior
Court of Robeson County is, by that statute, required to account.

On January 6, 1964, the accountant filed with the board of county commissioners his report and audit covering the period December 1, 1962 — November 30, 1963. The audit, so far as pertinent to the question for decision, showed liabilities of $159,650.15, composed of:

UNDISTRIBUTED COURT COST COLLECTIONS:

| | | |
|---|---:|---:|
| Civil Court Cost Dockets | $ 6,476.92 | |
| Special Proceedings Cost Dockets | 75,062.58 | |
| Criminal Court Cost Dockets | 14,311.74 | |
| Trust Accounts Payable | 2,450.65 | |
| | | $ 98,301.89 |
| JUDGMENTS PAYABLE | | 51,414.19 |
| MISCELLANEOUS ACCOUNTS AND UNDISTRIBUTED ITEMS | | 66.25 |
| INTEREST COLLECTED FROM INVESTMENTS OF GENERAL FUNDS — UNDISTRIBUTED | | 9,842.82 |
| DUE TO ROBESON COUNTY GENERAL FUND — Change Fund | | 25.00 |
| TOTAL LIABILITIES | | $159,650.15 |

Assets to balance the liabilities consisted of: (1) An uncollected account and cash amounting to $78.85; (2) deposit with First Union National Bank (checking account) $38,248.48; (3) five certificates of deposit, dated November 30, 1963, payable November 30, 1964, aggregating $61,682.82; and (4) U. S. Savings Bonds, Series E and J. These bonds cost $59,640.00. The maturity value of these securities is $82,000.

The item $9,842.82, shown as a liability, is composed of: (1) $2,372.42, interest received for the year ending November 30, 1963, and (2) $7,470.40, interest received prior to November 30, 1962.

On January 13, 1964, the Board of Commissioners of Robeson County adopted a resolution requesting plaintiff to pay to the general fund of the county the $9,842.82 earned prior to December 1, 1963. The right to request payment was based on the statute of 1955, as amended in 1963.

Plaintiff, fearful of his right to comply with the request, instituted this action for a judgment declaratory of the rights of the parties. The court held the statute valid and directed plaintiff to "pay into the General Fund of Robeson County all interest income and income revenues received from such investments and any profit from the resale

of such investments as may from time to time come into his hands." The court further adjudged: "[T]he plaintiff, herein, shall not be subjected to any civil liability to any person or party by reason of his carrying out and performing the provisions of this Judgment."

Plaintiff excepted and appealed.

*Wm. E. Timberlake for plaintiff appellant.*
*Dickson McLean, Jr., for defendant appellees.*

RODMAN, J.  Chapter 881, S. L. 1955, is entitled "AN ACT AUTHORIZING THE BOARD OF COMMISSIONERS AND CLERK OF THE SUPERIOR COURT OF THE COUNTY OF ROBESON TO INVEST CERTAIN FUNDS." Section 1 of the Act relates to the investment of county moneys. Section 2 of the Act, with the 1963 amendments in italics, provides:

"Sec. 2.  The Clerk of Superior Court of the County of Robeson is hereby authorized and empowered, in his discretion and with the approval of the board of commissioners of said county, to invest or reinvest any moneys representing unclaimed court costs, fees received, *and judgment payments and all moneys received* and held by him by color of his office, *excepting amounts held by him in specific trust or fiduciary accounts,* in United States Treasury certificates of indebtedness, notes, bonds or bills, or in obligations of any agency or instrumentality of the United States Government if the payment of principal and interest of such obligations is guaranteed by the United States of America, or in bonds or notes of the State of North Carolina. Said clerk may, with the approval of the board of county commissioners, sell any or all of such securities held for investment as provided herein at a price or prices not less than the market price thereof. The interest and revenues received upon such securities and any profit from the sale thereof shall be deposited in and become a part of the general fund of the county: *Provided, however, that if any valid claim with respect to such interest, revenues, or profit shall be asserted and presented to the Board of County Commissioners of Robeson County by any person, said board is hereby authorized to refund to such person out of the general fund of the county the amount of such claim.*"

The Clerk of the Superior Court is authorized to collect: fines, penalties and forfeitures, G.S. 2-42(22); moneys belonging to indigent orphans, G.S. 2-42(26), G.S. 2-53; judgments, G.S. 1-239; costs, including a jury tax, witness fees and fees due officers; insurance payable to minors or other incompetents, G.S. 2-52.

The foregoing statutory references relating to the duty of the Clerk of the Superior Court to collect moneys is not intended to be a complete resume of the statutes imposing this duty. They are merely illustrative. The duty to receive carries with it the duty to pay the sums collected to the parties entitled thereto, G.S. 1-241, G.S. 2-3.

The $98,301.89 listed in the audit as "Undistributed Court Cost Collections" consists of $6,476.92 "Civil Court Cost Dockets." The audit lists under this title 422 civil cases. It shows the name of the defendant, the amount on hand and the date of the last collection. The amounts on hand vary from less than $1.00 in some cases to $500.00 in another. The date of collection varies from November 6, 1949 to November 29, 1963.

Listed under the title "Special Proceedings Cost Dockets" is the sum of $75,062.58; this sum represents collections made in 555 special proceedings. The amounts collected and not distributed vary from less than $1.00 in two instances to as much as $7,099.26 in another instance where the only party listed is designated as a minor. The collections were made between December 16, 1942 and November 29, 1963.

Listed under the title "Criminal Court Cost Dockets" is the sum of $14,311.74; this sum represents undisbursed collections in 186 cases. The amounts collected in the different cases vary from a low of $1.00 to a high of $1,350.00. The dates of collection are as early as February 28, 1948 and as late as November 27, 1963.

Trust Accounts Payable: Under this title is listed $2,450.00; the audit shows this sum is owing to sixty different people. The amounts owing the different beneficiaries vary from a low of $1.50 to a high of $145.00. No other information is given. No reason is given for the failure to make payment to the beneficial owners.

Judgments Payable: Under this title is shown a liability of $51,-414.19, representing collections in 145 cases. The audit merely shows the name of the plaintiff, the amount and date collected. The amounts collected vary from a low of $1.35 to a high of $2,206.00. The dates on which collections were made are as early as August 27, 1946 and as late as November 22, 1963.

It is manifest from the foregoing summary that allocation of the earnings which have accrued on the funds paid to the Clerk will present problems in accounting, but that fact does not justify depriving the owners of the funds of their share of the earnings. *Williams v. Hooks,* 199 N.C. 489, 154 S.E. 828; *Bordy v. Smith,* 34 N.W. 2d 331, 5 A.L.R. 2d 250; *United States v. Mosby,* 133 U.S. 273, 33 L. Ed. 625,

10 S. Ct. 327; *Rhea v. Brewster*, 107 N.W. 940, 8 Ann. Cas. 389; *Adams v. Williams*, Ann. Cas. 1912C, 1129, 30 L.R.A. (N.S.) 855; 43 Am. Jur. 120.

The earnings on the fund are a mere incident of ownership of the fund itself. The constitutional provision, Art. I, Sec. 17, that no person shall be deprived of his property "but by the law of the land," applies to the earnings in the same manner, and with the same force, it applies to the principal.

Presumably the statute, on which defendants rely, was enacted on the assumption that it was a valid exercise of the power to take because of the absence of a lawful owner. The Legislature has the power, subject to constitutional limitations, to enact statutes relating to *escheats* or *bona vacantia*.

Penalties, forfeitures and fines are, by Art. IX, Sec. 5 of our Constitution, to be used for the support of the public schools. Was any part of the money demanded by defendants earned by fines or forfeitures? The record is silent.

Art. IX, Sec. 7 of our Constitution, declares that property accruing "from *escheats*, unclaimed dividends, or undistributed shares of the estates of deceased persons, shall be appropriated to the use of the University." What part, if any, of the funds earning income was *escheated?* If none was *escheated*, what portion, if any, was abandoned property? Does abandoned property belong in the same class with *escheated* property? May the Legislature deprive the University of unclaimed property? *University v. R. R.*, 76 N.C. 103; *University v. High Point*, 203 N.C. 558, 166 S.E. 511.

Are the earnings which the county claims derived from unclaimed fees, unclaimed judgment payments, and other unclaimed moneys held by the Clerk by color of his office, or is the word "unclaimed" restricted to court costs? When does the payment to the Clerk in satisfaction of a judgment, or the earnings of such payment, become "unclaimed?" Is a payment by an insurance company to the Clerk for a minor, or other incompetent beneficiary, in a policy of insurance, an unclaimed fund during the period of incompetency; if not, how soon after the disability is removed does it become an unclaimed fund? Do the earnings on such funds become unclaimed during the period of disability; if not, how soon after the disability is removed do they become unclaimed?

*Bona fide* claimants may not be deprived of an opportunity to be heard on these crucial questions. "The law of the land" and "due process of law" provisions of the North Carolina and U. S. Constitutions require notice and an opportunity to be heard before a citizen may be deprived of his property. *Marshall v. Lovelass*, 1 N.C. 412; *Phelps v.*

*Chesson,* 34 N.C. 194; *Parish v. Cedar Co.,* 133 N.C. 478, 45 S.E. 768; *Lumber Co. v. Lumber Co.,* 135 N.C. 742, 47 S.E. 757; sc, 137 N.C. 431, 49 S.E. 946; *Bd. of Education v. Johnston,* 224 N.C. 86, 29 S.E. 2d 126; *Re Melrose Ave.,* 136 N.E. 235, 23 A.L.R. 1233; *Hamilton v. Brown,* 161 U.S. 256, 40 L. Ed. 691, 16 S. Ct. 585; *Security Savings Bank v. California,* 263 U.S. 282, 68 L. Ed. 301, 44 S. Ct. 108, 31 A.L.R. 391; *Standard Oil Co. v. New Jersey,* 341 U.S. 428, 95 L. Ed. 1078, 71 S. Ct. 822; *Realty Associates of Portland, Oregon v. Women's Club,* 369 P. 2d 747; 1 Am. Jur. 2d, Abandoned Property, Sections 6, 11, 33 & 34.

"When declaratory relief is sought, all persons shall be made parties who have, or claim, any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." G.S. 1-260. Notwithstanding the clear and specific language of this statute, no one representing the owners of the funds has been afforded an opportunity to challenge the right of Robeson County to take the earnings on his moneys, nor has the University been afforded an opportunity to be heard. If the challenged statute is not in conflict with Art. IX, Sec. 7 of the N. C. Constitution, does it impair rights acquired by the University pursuant to G.S. 116-23.

The record before us fails to show any effort to locate the owners of the moneys received by plaintiff by color of his office. No reason is assigned for retaining, rather than disbursing, these funds. It does appear from the audit that $25,200.00 of U. S. Savings Bonds were purchased in May, 1952. They matured in May of this year. The moneys invested earned $9,800.00. In addition to these earnings, the county will collect this year as interest on the certificates of deposit in excess of $2,200.00. The record is barren of explanation for the delay in disbursing the moneys collected by the Clerk.

We think it apparent that the owners of the sums deposited with the Clerk will, when informed of the asserted right to sequester their earnings, fortify themselves with constitutional guaranties for the protection of their property. They must be accorded an opportunity to assert their rights. Plaintiff acted wisely in refusing the request of the county commissioners.

The extent, if any, to which the provisions of G.S. 1-70 may be utilized in bringing before the court parties necessary for a decision need not now be determined. No attempt has been made to comply with that statute. As to what is necessary in the way of notice, see: *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652.

The judgment is reversed and the cause remanded for compliance with the provisions of G.S. 1-260.

Reversed and remanded.