KEVIN PATRICK ROWLETTE, JANITH MARTIN, MARCHELLA THOMAS AND WANDA ADAMS, INDIVIDUALLY AND ON BEHALF OF A CLASS OF ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS v. STATE OF NORTH CAROLINA, AND RICHARD H. MOORE, IN HIS OFFICIAL CAPACITY AS THE TREASURER FOR THE STATE OF NORTH CAROLINA, DEFENDANTS

No. COA06-1036

(Filed 19 February 2008)

**Constitutional Law— takings—interest on unclaimed property**

The trial court correctly granted defendant's Rule 12(b)(6) motion to dismiss an action alleging an unconstitutional taking by the State retaining the interest from unclaimed funds after they were returned to the owners. This property is unique in that the State did not take possession through its own action, but as a result of the owner's neglect. The capture of interest on the property is not a taking.

Appeal by Plaintiffs from order entered 8 June 2006 by Judge Robert H. Hobgood in Wake County Superior Court. Heard in the Court of Appeals 15 March 2007.

*Futterman Howard Watkins Wylie & Ashley, Chtd., by John R. Wylie, pro hac vice, for Plaintiffs-Appellants.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Douglas A. Johnston, for the State.*

STEPHENS, Judge.

"[T]he security of Property[,]" Alexander Hamilton informed the Philadelphia Convention in May of 1787, is one of the "great obj[ects] of Gov[ernment.]" 1 *The Records of the Federal Convention of 1787* 302 (Max Farrand ed. 1911). Accordingly, the United States Constitution provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V.[1] Although North Carolina's Constitution does not expressly prohibit private property from being taken for public use without compensation, " 'the principle is so grounded in natural equity that it has never been denied to be a part of the law of North Carolina[,]' " *Department of Transp. v. M.M. Fowler, Inc.*, 361 N.C. 1, 4-5, 637 S.E.2d 885, 889 (2006) (quoting John V. Orth, *The North Carolina State Constitution* 58 (paperback ed. 1995)), and North Carolina's Constitution expressly provides that "[n]o person shall be . . . deprived of . . . property, but by the law of the land." N.C. Const. art I, § 19. In this case, we are called upon to determine whether the North Carolina Unclaimed Property Act, N.C. Gen. Stat. § 116B-51 *et seq.* (2003), violates these governmental guarantees which operate for the security of property. We hold that it does not.

## FACTS

Plaintiffs Kevin Patrick Rowlette ("Rowlette"), Janith Martin ("Martin"), Marchella Thomas ("Thomas"), and Wanda Adams ("Adams") commenced this action by filing a complaint on 23 November 2004. According to the complaint, each Plaintiff owned property "which was delivered to and held by [] Defendants" pursuant to the Unclaimed Property Act. As to Rowlette, the complaint alleged Defendants held "dividends in the amount of $236.00[.]" As to Martin, Thomas, and Adams, respectively, the complaint alleged Defendants held $118.20, $71.95, and $84.01 worth of "funds[.]" Over the course of 2004, Defendants returned Plaintiffs' property to them, "but re-

---

1. This guarantee has been applied to the states by the Fourteenth Amendment to the United States Constitution. *Chicago, B. & Q. R. Co. v. Chicago*, 166 U.S. 226, 41 L. Ed. 979 (1897); *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 57 L. Ed. 2d 631, *reh'g denied*, 439 U.S. 883, 58 L. Ed. 2d 198 (1978).

tained any interest or other income that had accrued on the property while in Defendants' custody." Plaintiffs alleged that Defendants' retention of the interest or income violated Article I, § 19 of the North Carolina Constitution and the Fifth and Fourteenth Amendments of the United States Constitution. Plaintiffs further alleged that Defendants' actions violated Section 1983 of the federal Civil Rights Act. Finally, Plaintiffs sought a determination that the action could be maintained as a class action on behalf of all other similarly situated persons or entities.

On 21 November 2005, Defendants filed a motion to dismiss Plaintiffs' complaint pursuant to Rules 12(b)(1), (2) and (6) of North Carolina's Rules of Civil Procedure. By the same pleading, Defendants moved the trial court to "strike [P]laintiffs' class action motion" pursuant to Rules 12(f) and 23 of the Rules of Civil Procedure. The matter came on for hearing before the Honorable Robert F. Hobgood in Wake County Superior Court on 30 May 2006.[2] By order filed 8 June 2006, Judge Hobgood dismissed Plaintiffs' action "against all Defendants pursuant to Rule 12(b)(1) and Rule 12(b)(6)." Plaintiffs timely appealed to this Court.

## STANDARD OF REVIEW

The standard of review on a motion to dismiss under Rule 12(b)(1) is *de novo*. *Welch Contr'g, Inc. v. N.C. Dep't of Transp.*, 175 N.C. App. 45, 622 S.E.2d 691 (2005). "The standard of review on a motion to dismiss under Rule 12(b)(6) is 'whether, if all the plaintiff's allegations are taken as true, the plaintiff is entitled to recover under some legal theory.' " *Id.* at 50, 622 S.E.2d at 694 (quoting *Toomer v. Garrett*, 155 N.C. App. 462, 468, 574 S.E.2d 76, 83 (2002)).

"[T]he judicial duty of passing upon the constitutionality of an act of the General Assembly is one of great gravity and delicacy." *Guilford Cty. Bd. of Educ. v. Guilford Cty. Bd. of Elections*, 110 N.C. App. 506, 511, 430 S.E.2d 681, 684 (1993) (citing *Greensboro v. Wall*, 247 N.C. 516, 101 S.E.2d 413 (1958)). When examining the constitutional propriety of legislation, "[w]e presume that the statutes are constitutional, and resolve all doubts in favor of their constitutionality." *State v. Evans*, 73 N.C. App. 214, 217, 326 S.E.2d 303, 306 (1985) (citing *In re Hous. Bonds*, 307 N.C. 52, 296 S.E.2d 281 (1982); *In re Banks*, 295 N.C. 236, 244 S.E.2d 386 (1978)). "In challenging the constitutionality of a statute, the burden of proof is on the challenger,

---

2. The complaint was originally filed in Guilford County, but was transferred to Wake County by consent.

and the statute must be upheld unless its unconstitutionality clearly, positively, and unmistakably appears beyond a reasonable doubt or it cannot be upheld on any reasonable ground." *Guilford Cty. Bd. of Educ.*, 110 N.C. App. at 511, 430 S.E.2d at 684-85 (citing *Baker v. Martin*, 330 N.C. 331, 410 S.E.2d 887 (1991); *In re Belk*, 107 N.C. App. 448, 420 S.E.2d 682, *appeal dismissed and disc. review denied*, 333 N.C. 168, 424 S.E.2d 905 (1992)).

## ANALYSIS

The North Carolina Unclaimed Property Act provides the framework by which our State locates, collects, and "assumes custody and responsibility for the safekeeping" of "tangible personal property" which has gone unclaimed by its owner. N.C. Gen. Stat. §§ 116B-63, 116B-52(11) (2003). Such property includes, but is not limited to, cash, checks, deposits, interest, dividends, credit balances, customers' overpayments, unpaid wages, stocks, bonds, amounts due under insurance policies, amounts distributable from trusts, and the contents of safe deposit boxes. N.C. Gen. Stat. §§ 116B-52(11), 116B-55 (2003).

> Property is unclaimed if the apparent owner has not communicated in writing or by other means reflected in a contemporaneous record prepared by or on behalf of the [property's] holder, with the holder concerning the property or the account in which the property is held, and has not otherwise indicated an interest in the property.

N.C. Gen. Stat. § 116B-53(a) (2003); *see also* N.C. Gen. Stat. § 116B-52(5) (2003) (defining "holder" as "a person obligated to hold for the account of or deliver or pay to the owner property[.]"). Depending on the type of property at issue, the property is "presumed abandoned" after a prescribed period of time, and the holder is then required to deliver the property to the State Treasurer. N.C. Gen. Stat. §§ 116B-53(c), 116B-61(a) (2003). Within three years of receiving the property, the Treasurer is required to sell the property at a public sale and to deposit the proceeds into the State's Escheat Fund. N.C. Gen. Stat. § 116B-65 (2003). The income derived from the investment of funds deposited into the Escheat Fund is distributed annually "to the State Education Assistance Authority for grants and loans to aid worthy and needy students who are residents of this State and are enrolled in public institutions of higher education in this State." N.C. Gen. Stat. § 116B-7(a) (2003).

At any time after unclaimed property is delivered to the Treasurer, a holder or owner may subsequently reclaim the property, or the amount received by the Treasurer from the sale of the property, by filing a claim with the Treasurer. N.C. Gen. Stat. §§ 116B-63, 116B-67 (2003).

> If property other than money is delivered to the Treasurer under this Chapter, the owner is entitled to receive from the Treasurer any income or gain realized or accruing on the property at or before liquidation or conversion of the property into money. If the property is interest-bearing or pays dividends, the interest or dividends shall be paid until the date on which the amount of the deposits, accounts, or funds, or the shares must be remitted or delivered to the Treasurer under G.S. 116B-61. *Otherwise, when property is delivered or paid to the Treasurer, the Treasurer shall hold the property without liability for income or gain.*

N.C. Gen. Stat. § 116B-64 (2003) (emphasis added). The dispositive issue on appeal is whether this directive—that the Treasurer, when returning property to its owner after a claim is made, shall not surrender income the State earned on the property or its proceeds—is unconstitutional. Citing the common law rule that "interest follows principal," Plaintiffs contend that because the State is a "mere custodian" of unclaimed property, *Rose's Stores, Inc. v. Boyles,* 106 N.C. App. 263, 265, 416 S.E.2d 200, 201, *disc. review allowed,* 332 N.C. 484, 421 S.E.2d 356 (1992), the State's retention of earned interest is an unconstitutional taking.

We are not aware of any decisions of the United States or North Carolina Supreme Courts which squarely address the issue presented. Plaintiffs, however, present authority from those Courts which they contend supports their position that the State's action in this case violates the constitutional guarantees.

In *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 66 L. Ed. 2d 358 (1980), Eckerd's of College Park, Inc. ("Eckerd's") entered into an agreement to purchase substantially all of Webb's assets. When it appeared at closing that Webb's debts were greater than the purchase price, Eckerd's filed a complaint of interpleader in a Florida Circuit Court to protect itself, as permitted by Florida law. Pursuant to Florida law, the Circuit Court ordered the amount tendered at closing paid to the court's clerk, who was required to deposit the money in an interest bearing account. When the tendered amount was eventually ordered paid to Webb's receiver, the clerk did not sur-

render the interest which had accrued on the account[3] because a Florida statute dictated that all accruing interest was deemed income of the clerk.[4] The Florida Supreme Court held this statute was constitutional and that the clerk's retention of the interest was not a taking because: (1) the deposited funds were considered "public money" from the date of deposit until the funds left the account; (2) the statute "takes only what it creates"; and (3) the interest earned on the account was not private property. *Beckwith v. Webb's Fabulous. Pharmacies, Inc.*, 374 So. 2d 951, 952-53 (Fla. 1979).

The United States Supreme Court reversed, holding that the statute violated the Fifth and Fourteenth Amendments. While the Court acknowledged that it "has been permissive in upholding governmental action that may deny the property owner of some beneficial use of his property or that may restrict the owner's full exploitation of the property, if such public action is justified as promoting the general welfare[,]" *Webb's*, 449 U.S. at 163, 66 L. Ed. 2d at 366 (citing *Andrus v. Allard*, 444 U.S. 51, 64-68, 62 L. Ed. 2d 210 (1979); *Penn Central*, 438 U.S. at 125-29, 57 L. Ed. 2d 631), the Court held

> a State, by *ipse dixit*, may not transform private property into public property without compensation, even for the limited duration of the deposit in court. This is the very kind of thing that the Taking Clause of the Fifth Amendment was meant to prevent. That Clause stands as a shield against the arbitrary use of governmental power.

*Id.* at 164, 66 L. Ed. 2d at 367.

The facts of *Webb's* are easily distinguishable from the facts of the case at bar and Plaintiff's reliance on *Webb's* is misplaced. The nature of the property at issue in *Webb's* is quite distinct from the property at issue in this case. In that case, the property was paid into court by a known entity and was due to Webb's known creditors. In the case at bar, the property at issue was unclaimed and presumed abandoned. Furthermore, the Supreme Court specifically limited its holding to the "narrow circumstances" of that case[5] and "express[ed] no view as

---

3. The interest which had accrued totaled more than $100,000.

4. The clerk also retained a statutorily prescribed fee for services rendered in receiving the money.

5. The Court specifically listed the narrow circumstances of that case:

[W]here there is a separate and distinct state statute authorizing a clerk's fee "for services rendered" based upon the amount of principal deposited; where the deposited fund itself concededly is private; and where the deposit in the court's

to the constitutionality of a statute that prescribes a county's retention of interest earned, where the interest would be the only return to the county for services it renders." *Id. Webb's* does not control the resolution of this case.

In *Phillips v. Washington Legal Found.*, 524 U.S. 156, 141 L. Ed. 2d 174 (1998) and *Brown v. Legal Found. of Washington*, 538 U.S. 216, 155 L. Ed. 2d 376 (2003), the Supreme Court evaluated the constitutionality of two states' use of interest earned on the property of private individuals being held in attorneys' trust accounts ("IOLTA" accounts) to fund legal services for low income individuals. In *Phillips*, the Supreme Court acknowledged "the general rule that 'any interest . . . follows the principal.' " *Phillips*, 524 U.S. at 166, 141 L. Ed. 2d at 185 (quoting *Webb's*, 449 U.S. at 162, 66 L. Ed. 2d at 365). The Court then held that "interest income generated by funds held in IOLTA accounts is the 'private property' of the owner of the principal." *Id.* at 172, 141 L. Ed. 2d at 188. However, the Court expressed "no view as to whether these funds have been 'taken' by the State[.]" *Id.*

In *Brown*, the Court addressed the question left unresolved by *Phillips*. Citing *Phillips*, the Court again recognized an owner's property interest in accrued earnings of IOLTA accounts. The Court further held that the appropriation of those earnings by the state constituted a "taking" and triggered the protections of the Fifth Amendment. Finally, however, the Court reasoned that "pecuniary compensation must be measured by [an owner's] net losses rather than the value of the public's gain," *Brown*, 538 U.S. at 237, 155 L. Ed. 2d at 395, and that since funds deposited into IOLTA accounts would otherwise not earn any interest, the owners of the funds had not suffered any compensable loss. The Court held that because "the owner's pecuniary loss . . . is zero . . . there has been no violation of the Just Compensation Clause of the Fifth Amendment in this case." *Id.* at 240, 155 L. Ed. 2d at 397.

As with *Webb's*, neither *Phillips* nor *Brown* leads us inevitably to the conclusion that the State's action in the case at bar is unconstitutional. We again emphasize the unique nature of the property at issue in this case as compared to the property at issue in *Phillips* and *Brown*. Both of those cases dealt with property that unquestion-

---

registry is required by state statute in order for the depositor to avail itself of statutory protection from claims of creditors and others[.]

*Webb's*, 449 U.S. at 164, 66 L. Ed. 2d at 367.

ably belonged to identified owners. Here, we are dealing with property that is presumed abandoned until a holder or owner makes a claim to the Treasurer. The holdings of *Phillips* and *Brown* are, thus, distinguishable.

Finally, Plaintiffs direct our attention to the North Carolina Supreme Court's decision in *McMillan v. Robeson Cty.*, 262 N.C. 413, 137 S.E.2d 105 (1964). In that case, the Court evaluated a statute that permitted county clerks of court "to invest or reinvest any moneys representing unclaimed court costs, fees received, *and judgment payments and all moneys received* and held by him by color of his office[.]" *Id.* at 415, 137 S.E.2d at 107. The statute provided further that "[t]he interest and revenues received upon such securities and any profit from the sale thereof shall be deposited in and become a part of the general fund of the county[.]" *Id.* When the Robeson County Board of Commissioners instructed the County's clerk to deposit into the County's general fund the interest which had accumulated on such invested funds, the clerk sought a declaratory judgment to determine the constitutionality of the statute. The trial court held the statute valid and directed the clerk to deposit the accumulated interest into the general fund. The Supreme Court reversed, stating that "earnings on the fund are a mere incident of ownership of the fund itself[,]" and "[t]he constitutional provision . . . that no person shall be deprived of his property 'but by the law of the land,' applies to the earnings in the same manner, and with the same force, it applies to the principal." *Id.* at 417, 137 S.E.2d at 108. Noting that no one with an interest in the funds had been afforded an opportunity to challenge the right of the County to take the earnings on the funds, the Court remanded the case to the trial court for compliance with the statutory mandate that " '[w]hen declaratory relief is sought, all persons shall be made parties who have, or claim, any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings.' G.S. s 1-260." *Id.* at 418, 137 S.E.2d at 109.

While the Court in *McMillan* reaffirmed the long-standing common law rule that "interest follows principal," the Court's ruling did not address or rely on the constitutional provisions at issue in the case at bar. The Court merely remanded the action to the trial court so that all interested parties could fully develop their claims.

Plaintiff's contention to the contrary notwithstanding, we find guidance in the United States Supreme Court's decision in *Texaco, Inc. v. Short*, 454 U.S. 516, 70 L. Ed. 2d 738 (1982). In that case, the

Court reviewed the constitutionality of Indiana's Mineral Lapse Act. That statute provided that "a severed mineral interest that is not used for a period of 20 years automatically lapses and reverts to the current surface owner of the property, unless the mineral owner files a statement of claim in the local county recorder's office." *Id.* at 518, 70 L. Ed. 2d at 744. When the owners of severed mineral interests did not use the interests for twenty years and did not file a statement of claim, the surface owner of the tract brought an action seeking declaratory judgment that the mineral owners' rights had lapsed and were extinguished. The Indiana Supreme Court held that the statute was constitutional as a permissible exercise of the state's police power.

The United States Supreme Court affirmed, stating, "[f]rom an early time, this Court has recognized that States have the power to permit *unused* or *abandoned* interests in property to revert to another after the passage of time." *Id.* at 526, 70 L. Ed. 2d at 749 (emphasis added). The Supreme Court "has never required the State to compensate the owner for the consequences of his own neglect. . . . It is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right; there is no 'taking' that requires compensation." *Id.* at 530, 70 L. Ed. 2d at 751-52. The courts of several other states have cited *Texaco* in upholding the constitutionality of their states' unclaimed property acts.

In *Smolow v. Hafer*, 867 A.2d 767 (Pa. Commw. Ct. 2005), the Commonwealth Court of Pennsylvania examined Pennsylvania's Unclaimed Property Law when a suit was brought against the state for refusing to remit interest accrued on unclaimed property while it was in the state's possession. As with North Carolina's Act, Pennsylvania's Unclaimed Property Law provided that unclaimed property is presumed abandoned. Pennsylvania's statute further provided that upon a claim made by an owner, the state was required to return the property or the proceeds therefrom, but was not required to remit any interest earned on the property or its proceeds to the owner. Relying on *Texaco*, the Pennsylvania court determined that it was "Smolow's abandonment of his property, not the action of the Treasurer, which caused his pecuniary loss." *Id.* at 775. Therefore, the court held that "where an owner's interest in property is transferred to another pursuant to the Unclaimed Property Law and *due to the original owner's abandonment,* the delivery of the property to the Treasurer does not constitute a taking." *Id.*

In *Smyth v. Carter*, 845 N.E.2d 219 (Ind. Ct. App.), *transfer denied*, 860 N.E.2d 588 (Ind. 2006), *cert. denied*, 549 U.S. 1181, 166 L. Ed. 2d 996 (2007), the Indiana Court of Appeals determined that the refusal of the state to remit interest earned on property held pursuant to Indiana's Unclaimed Property Act did not violate the Taking Clause. Like Pennsylvania's and North Carolina's unclaimed property statutes, Indiana's law provided that the state may take custody of unclaimed property that is "presumed abandoned if the owner has not shown any interest in the property for a statutorily prescribed period of time." *Id.* at 222 (citation omitted). As in the case *sub judice*, the plaintiff in *Smyth* premised his "contention . . . on his belief that the State's possession of property . . . is 'purely' custodial[,]" and on "the common law maxim that 'interest follows principal.' " *Id.* at 223. Relying on *Texaco*, the Indiana court rejected Plaintiff's argument and held that "[b]ecause it is the owner's failure to act, and not the State's exercise of its sovereign power, that causes the deprivation, there is no 'taking' that requires compensation." *Id.* at 224.

In *Hooks v. Kennedy*, 961 So. 2d 425 (La. Ct. App.), *cert. denied*, 967 So. 2d 507 (La. 2007), the Louisiana Court of Appeal upheld the constitutionality of that state's unclaimed property act. Like North Carolina's Act, Louisiana's law provided

a **custodial** scheme for handling certain types of abandoned property, rather than one in which the **title** to the abandoned property reverts to the sovereign. Under Louisiana law, after a specified passage of time, holders of property abandoned by missing owners must report the possession of the abandoned property and relinquish custody to the state. Upon transfer from the holder, the state assumes custody and responsibility for the safekeeping of the property.

*Id.* at 430-31 (quotation marks, footnote, and citations omitted). " 'Pending a claim by a missing owner, the [s]tate receives the use of the property as well as any income that it may provide.' " *Id.* at 431 (quoting *Louisiana Health Servs. & Indem. Co. v. McNamara*, 561 So. 2d 712, 716 (La. 1990)). In holding that the state's capture of interest under Louisiana's unclaimed property law did not violate the Taking Clause, the Louisiana Court of Appeal recognized that

[t]he triggering event in the exercise of the state's power of eminent domain is the state's overt act of taking private property from an owner. The triggering event in an unclaimed property

case is the owner's act of abandonment over a period of several years. After abandonment, the unclaimed property law requires the holder of the abandoned property to transfer "custody," not title, to the state.

*Id.* at 432 (citations omitted). Like the Supreme Court in *Texaco*, and the appellate courts of Indiana and Pennsylvania, the Louisiana court recognized that there can be no actionable taking when it is the neglect of the property owner that causes the state to assume custody of the property, and not an overt action on the part of the state to take private property from an owner.

Finally, in *Sogg v. Ohio Dep't of Commerce*, No. 06AP-883, 2007 WL 1821306 (Ohio Ct. App. 2007), *appeal allowed*, 876 N.E.2d 968 (Ohio Nov. 21, 2007), the Court of Appeals of Ohio distinguished *Webb's*, *Phillips*, and *Brown* on the basis of the "unique nature" of the property at issue in unclaimed property cases. *Id.* at *10. The court stated that although "title to unclaimed funds remains with the owner, there is unquestionably a *property lapse* that occurs because of the owner's failure to act with respect to said property within a statutorily prescribed period of time." *Id.* at *5 (emphasis added). The court continued:

Because of the unique nature of the property, the state's retention of the interest earned on unclaimed funds while those funds are in the custody and control of the state, due to the owner's failure to take any action with respect to the property for the statutorily prescribed period of time, does not constitute a taking that requires compensation. It is the owner's conduct, and not that of the state that causes the lapse of the property right.

*Id.* at *10.

Based on a thorough review of the authority discussed above, we are persuaded by the United States Supreme Court's reasoning in *Texaco* to conclude that the State's retention of interest earned on unclaimed property while that property is in the State's possession is not a taking and, therefore, does not violate the United States or North Carolina Constitutions. In reaching this result, we do not conclude that *Texaco*, as a matter of law, bars Plaintiffs' claim. We are cognizant that the statute at issue in that case had the effect of transferring private property rights not to a state, but to another private party. Rather, we rely on the underlying reasoning of that Court's holding: "[T]his Court has never required the State to compensate the owner for consequences of his own neglect. . . . It is the owner's fail-

ure to make any use of the property—and not the action of the State—that causes the lapse of the property right; there is no 'taking' that requires compensation." *Texaco*, 454 U.S. at 530, 70 L. Ed. 2d at 751-52. Here, the State does not take possession of private property through any overt action on its part. Rather, the State comes into possession of the property as a result of the owner's neglect which causes the property to be unclaimed for the prescribed period of time, and thus deemed abandoned. Due to this unique nature of the property, and since it is the owner's neglect that results in the State's possession of the property, the capture of interest accruing on that property by the State is not a taking, and the State is not required to pay the owner "just compensation."

Plaintiffs have not met their burden of showing "clearly, positively, and unmistakably . . . beyond a reasonable doubt" that section 116B-64 is violative of either the United States or the North Carolina Constitutions. *Guilford Cty. Bd. of Educ.*, 110 N.C. App. at 511, 430 S.E.2d at 684. Accordingly, the trial court properly granted Defendants' motion to dismiss pursuant to Rule 12(b)(6). Because the constitutional issue ultimately resolves the matter in Defendants' favor, we need not address Plaintiffs' remaining assignments of error. The order of the trial court is

AFFIRMED.

Chief Judge MARTIN and Judge ELMORE concur.