IN THE SUPREME COURT OF NORTH CAROLINA

No. 8A25

Filed 12 December 2025

DURHAM GREEN FLEA MARKET

v.

CITY OF DURHAM

Appeal pursuant to N.C.G.S. § 7A-30(2) (2023) from the decision of a divided panel of the Court of Appeals, 296 N.C. App. 594 (2024), affirming an order entered on 9 June 2023 by Judge James E. Hardin Jr. in Superior Court, Durham County. Heard in the Supreme Court on 10 September 2025.

*Troy D. Shelton and Robert T. Perry for plaintiff-appellant.*

*John Roseboro, Senior Assistant City Attorney, and Aarin K. Miles, Senior Assistant City Attorney, for defendant-appellee.*

ALLEN, Justice.

"Local governments have a responsibility to enact clear, unambiguous zoning rules." *Arter v. Orange County*, 386 N.C. 352, 352 (2024). The plain language of the City of Durham's Unified Development Ordinance (UDO) required the notice of violation (NOV) issued to the Durham Green Flea Market (the Market) by the City's planning department to describe the Market's alleged zoning violations. Because the NOV failed to describe those alleged violations, we reverse the judgment of the Court of Appeals and remand this case with instructions to the City to dismiss the NOV.

I.

The Market owns and operates a flea market in the City of Durham. On 17 January 2020, a site compliance officer with the City's planning department conducted a field inspection of the flea market. The inspection resulted in an NOV dated 10 February 2020 and served on the Market by certified mail.

The NOV notified the Market that "[t]he following zoning violation was observed during a recent field inspection: . . . Failure to comply with an approved site plan (D1300045)." *See* N.C.G.S. § 160D-102(29) (2023) (defining a site plan as a "scaled drawing and supporting text showing the relationship between lot lines and the existing or proposed uses, buildings, or structures on the lot"). The NOV further stated that the "condition constitute[d] a violation of the Durham Unified Development Ordinance, Section 3.7.2, Applicability, Site Plan and 15.1.2 Violation."

The NOV also addressed corrective action and potential penalties. It informed the Market that it had thirty days from receipt of the NOV to "remove all alterations inconsistent with the approved site plan" and that failing to do so could result in "civil penalties in an amount up to $500.00 per day for each day the violation exist[ed] after the [thirty-day] deadline." Finally, the NOV stated that the Market had thirty days from receipt of the NOV to appeal to the City's board of adjustment (BOA).

The NOV came with several pages attached. They included black-and-white copies of four photographs. Although blurry, the copies appeared to depict various structures at the flea market. There was also a hard-to-read copy of the Market's site plan, as well as an aerial photograph of the flea market as of 1 November 2019.

The Market appealed the NOV to the BOA, which held a quasi-judicial hearing on 21 June 2022. During the hearing, planning department staff testified that "additional improvements have been made [to the flea market] without amendments to the site plan," such as "temporary structures . . . that [were] covering required parking." Planning department staff also testified that the Market had a history of making unauthorized expansions.

The Market "disputed the accuracy of the [NOV,] asserting that it was too general to place [the Market] on notice of the specific violations being cited." In explaining why the NOV did not list the Market's alleged deviations from the site plan, the planning department manager testified: "[W]e issued [the NOV] for numerous things. We didn't want to list just one thing because there were several different issues and things that [the Market] has done to the property without site plan approval."

In response, one BOA member remarked that, after reading the NOV, he "was unable to determine what the violation was." He asked the manager why the NOV failed to cite any "specific violations." The manager elaborated: "Because, like I said, there were several different violations . . . . We don't want to issue [an NOV] that says, 'Hey, fix this, this, this, and this,' when there [are] a whole lot of things that were improved on the site." If the NOV had listed specific violations, the manager continued, then the Market "could [have] fix[ed] those things and not fix[ed] the others." The manager then offered another justification for the NOV's vagueness:

> Basically, what the NOV says, in general, is submit a site plan showing the changes that were made. If you submit something showing the changes—all the changes that were made—we don't have a problem or no questions come up at the end saying, "Hey, you didn't fix this or you didn't show this." So, usually what we like to do is keep it very broad in that type of situation because there were several different things on the property that were improved.

The same BOA member asked Robert Perry—the Market's majority owner and legal counsel—whether he had been "able to determine [from the NOV] the specific violations that were alleged and what specific action [he] needed to take to correct the violations." Perry testified, "No, I did not."

During the BOA's deliberations, the member announced to his colleagues that he could not support the planning department's action "due to the wording of the [NOV]." In his opinion, "the [NOV] must list the violations. If there's 20 or 30, it must list 20 or 30. What this [NOV] is is a boilerplate form, and it doesn't meet the standards."

Unpersuaded by this view, the other six members of the BOA voted to deny the Market's appeal. The BOA's order formally denying the appeal recorded that the dissenting member "expressed his concern about the general nature of the NOV and felt that it should have specifically cited each and every violation on the [the Market's] [p]roperty."

The Market appealed to the Superior Court, Durham County, asserting due process and other arguments, including that the NOV was "facially defective" because it "did not detail the alleged violations committed and the specific remedies afforded

to [the Market]." Rejecting the Market's assignments of error, the superior court entered an order filed on 9 June 2023 affirming the BOA's decision. The order gave the Market thirty-six months to come "into full compliance with a site plan, approved by the . . . [p]lanning [d]epartment."

The Market then appealed the superior court's order to the Court of Appeals, raising due process concerns and arguing that "the NOV was insufficient to inform [the Market] in advance of the basis of the proceedings against [the Market] . . . and [the Market] was not given notice and [an] opportunity to be heard." *Durham Green Flea Market v. City of Durham*, 296 N.C. App. 594, 597 (2024). The Market also maintained that the NOV "failed to adhere to UDO § 15.2.1.C, which requires, in relevant part: 'The notice shall include a description of the violation and its location, [and] the measures necessary to correct it.' " *Id.*

On 3 December 2024, a divided Court of Appeals panel filed an opinion affirming the superior court's order. *Id.* at 598–99. According to the majority, the NOV contained the "necessary components" to satisfy UDO § 15.2.1.C:

> The written NOV describes the violation: "Failure to comply with an approved site plan (D130045)[,]" includes attached images with location for reference, and specifies, "correction of this violation will require" removal of "all alterations inconsistent with the approved site plan[.]"

*Id.* at 597 (alterations in original).

Based in part on its determination that the NOV satisfied UDO § 15.2.1.C, the majority also accepted the superior court's conclusion that the Market received due

process. *Id.* at 598. The majority explained:

> [T]he NOV listed the violation and provided contact information with the option to reach [the planning department's] staff directly to inquire about the violation at issue. [The Market] had two opportunities to be heard on the violation. At a quasi-judicial hearing, an attorney appearing on [its] behalf presented argument and testimony.

*Id.*

The dissenting judge disagreed with the majority on multiple grounds.[1] Most significantly for purposes of our decision, he argued that the NOV did not comply with UDO § 15.2.1.C because it failed to describe the alleged violations and the measures necessary to correct them. *Id.* at 600 (Tyson, J., dissenting). In the dissenting judge's view, "[a] property owner in violation of a non-specific 'failure to comply' cannot be characterized as being 'on notice' of the violation itself or of the measures necessary to abate, correct, or cure the violation." *Id.* at 603. The dissenting judge further insisted: "The City failed to provide adequate advance notice of the specified site plan violations and, as such, [the Market] did not have the necessary information to abate, cure, or be adequately heard or present evidence at a fair and impartial hearing, in violation of [the Market's] Due Process rights." *Id.* at 603–04.

On 6 January 2025, the Market filed a notice of appeal based on the dissent in

---

[1] The dissenting judge also argued that the Market did not receive its constitutionally guaranteed "impartial, quasi-judicial hearing" and that the superior court "abused its discretion" under N.C.G.S. § 160D-1402(k) by requiring the Market to come into compliance with the site plan within thirty-six months. *Id.* at 599, 604 (Tyson, J., dissenting).

the Court of Appeals. Because this case was pending at the Court of Appeals prior to the repeal of N.C.G.S. § 7A-30(2), the dissent below triggered an appeal of right to this Court. *See* Current Operations Appropriations Act of 2023, S.L. 2023-134, § 16.21(d)–(e), 2023 N.C. Sess. Laws 760, 1171.

II.

In an appeal from a local government board's quasi-judicial decision, "[t]he standard of review used by the superior court depends on the precise issues raised." *Schooldev E., LLC v. Town of Wake Forest*, 386 N.C. 775, 784 (2024). If the petition alleges an error of law, the court reviews the alleged error de novo, considering the matter afresh and freely substituting its own judgment for that of the board. *Id.* In an appeal from the judgment of the superior court, the Court of Appeals examines the superior court's order for errors of law by (1) determining whether the superior court exercised the appropriate scope of review and, if so, (2) deciding whether the superior court did so properly. *Id.* at 785. "In the event that the case . . . reaches this Court[,] . . . the issue . . . is whether the Court of Appeals committed any errors of law." *PHG Asheville, LLC v. City of Asheville*, 374 N.C. 133, 151 (2020).

Here, the Market's central argument is that the City failed to follow its own ordinance and in so doing violated the Market's due process rights. Such alleged errors of law receive de novo review. N.C.G.S. § 160D-1402(j)(2) (2023). While it appears that the trial court and the Court of Appeals applied the correct standard of review, they nonetheless reached the wrong conclusion.

III.

"It is a principle never to be lost sight of, that no person should be deprived of his property or rights without notice and an opportunity of defending them." *Hamilton v. Adams*, 6 N.C. (2 Mar.) 161, 162 (1812). Both the due process clause of the Fourteenth Amendment to the United States Constitution and the law of the land clause in Article I, Section 19 of the North Carolina Constitution "require notice and an opportunity to be heard before a citizen may be deprived of his property." *McMillan v. Robeson County*, 262 N.C. 413, 417–18 (1964). *See also* U.S. Const. amend. XIV, § 1 (declaring that no state may "deprive any person of life, liberty, or property, without due process of law"); N.C. Const. art. I, § 19 (stating that no person may be "deprived of his life, liberty, or property, but by the law of the land").

Due process notice and hearing requirements apply to the enforcement of municipal and county zoning ordinances. *See County of Lancaster v. Mecklenburg County*, 334 N.C. 496, 507 (1993) ("[D]ue process requirements for quasi-judicial zoning decisions mandate that all fair trial standards be observed when these decisions are made."). The statutory provisions governing the enforcement of such ordinances reflect the General Assembly's solicitude for the due process rights of property owners. Under N.C.G.S. § 160D-404, for example, a formal enforcement action begins with "a written [NOV] . . . delivered to the holder of the development approval and to the landowner of the property involved, if the landowner is not the holder of the development approval." N.C.G.S. § 160D-404(a) (2023).

Consistent with N.C.G.S. § 160D-404, the City's UDO directs that, "[w]hen a violation [of the UDO] is discovered, and is not remedied through informal means, written notice of the violation shall be given." UDO § 15.2.1.A. The UDO goes beyond N.C.G.S. § 160D-404, however, in articulating the required components of an NOV:

> The notice shall include a description of the violation and its location, the measures necessary to correct it, the possibility of civil penalties and judicial enforcement action, and notice of the right to appeal. The notice shall also state the time period allowed, if any, to correct the violation, which time period may vary depending on the nature of the violation and [the] knowledge of the violator.

UDO § 15.2.1.C.

In its primary brief to this Court, the Market argues that the NOV issued by the City's planning department "not only violated due process protections and [N.C.G.S. §] 160D-404, but it also violated the city's own ordinance."[2] Focusing on the requirement in UDO § 15.2.1.C that an NOV contain "a description of the violation," the Market asserts that "the [NOV] issued to the Market did not constitute a proper 'description of the violation' under any reasonable interpretation of that phrase." We agree that the NOV failed to describe the Market's alleged violations as mandated by UDO § 15.2.1.C.

---

[2] In arguing that the NOV violated N.C.G.S. § 160D-404, the Market ignores the fact that the statute did not take effect until after the NOV was served on the Market. *See* An Act to Complete the Consolidation of Land-Use Provisions into One Chapter of the General Statutes as Directed by S.L. 2019-111, as Recommended by the General Statutes Commission, S.L. 2020-25, § 51(a), (b), (d), 2020 N.C. Sess. Laws 152, 196 (establishing 19 June 2020 as the effective date for Chapter 160D).

"Courts interpret zoning ordinances largely in the same manner as statutes and other written laws." *Arter v. Orange County*, 386 N.C. 352, 354 (2024). "The basic rule is to ascertain and effectuate the intent of the legislative body." *Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs*, 299 N.C. 620, 629 (1980). "We begin with the text of the statute and, if that text is clear and unambiguous, we 'conclude that the legislature intended the statute to be implemented according to the plain meaning of its terms.'" *Arter*, 386 N.C. at 354 (quoting *Lanvale Props., LLC v. County of Cabarrus*, 366 N.C. 142, 154 (2012)).

In our view, by requiring each NOV to include a "description of the violation," the Durham City Council clearly and unambiguously indicated that property owners should not have to guess what UDO violations are being alleged. If we were to conclude otherwise, we would effectively render the description requirement in UDO § 15.2.1.C meaningless. *See Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 216 (1990) ("A statute must be construed, if possible, so as to give effect to every provision, it being presumed that the Legislature did not intend any of the statute's provisions to be surplusage." (cleaned up)). Hence, for an NOV to satisfy the description requirement, it must leave the property owner with a reasonable understanding of the alleged violation. To accomplish this, the NOV will normally have to specify (1) which UDO provisions are at issue and (2) what conditions on the owner's property violate those provisions.

Several of the UDO's other NOV-related provisions support our interpretation

of the description requirement. As quoted above, UDO § 15.2.1.C also mandates that an NOV state "the measures necessary to correct" the violation and "the time period allowed, if any, to correct the violation." Obviously, a property owner must grasp the nature of an alleged violation if the owner is to take corrective action within a designated period.

Even if this Court were to regard the description requirement in UDO § 15.2.1.C as ambiguous, we would likely still construe it to demand significant detail. "[T]his Court will resolve any well-founded doubts about a [zoning ordinance] provision's meaning in favor of 'the free use of land.' " *Schooldev*, 386 N.C. at 776–77 (quoting *Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjustment*, 354 N.C. 298, 308 (2001)). Zoning enforcement actions interfere with the free use of land. Consequently, in undertaking such actions, local governments should be prepared to state with reasonable clarity the grounds for their interference.

Applied to the facts of this case, our reading of the description requirement in UDO § 15.2.1.C leads us to reverse the Court of Appeals. True, the NOV notified the Market that its property failed to comply with an approved site plan in violation of UDO § 3.7.2. Yet this general statement offered the Market no details whatsoever about the site plan deviations that prompted the planning department to issue the NOV. Similarly, with respect to corrective action, the NOV unhelpfully advised the Market "to remove all alterations inconsistent with the approved site plan within thirty (30) days of the receipt of this notice." Basically, the NOV told the Market, "You

know what you did. Now fix it." We do not believe that this is the kind of notice the Durham City Council envisioned when it adopted UDO § 15.2.1.C.

It should be added that the planning department's approach was not just inconsistent with the description requirement; it was also unfair. As previously observed, the planning department deliberately kept the NOV vague because, in the words of its manager, "We don't want to issue [an NOV] that says, 'Hey, fix this, this, this, and this,' when there [are] a whole lot of things that were improved on the site [because the violator] could fix those things and not fix the others." At the same time, however, the NOV threatened the Market with civil penalties of up to $500.00 per day for each violation that existed after the thirty-day remedial period. The NOV thus left the Market guessing as to exactly which violations the planning department had in mind and facing potentially steep civil penalties if it guessed incorrectly.

In its brief to this Court, the City makes several objections to the Market's contention that the NOV did not describe any alleged violations. In particular, the City asserts that the Market has nowhere explained "why the photographs [attached to the NOV] combined with the other elements of the [NOV] do not sufficiently identify the violation and how the violation can be cured." Even if we assume that photographs can qualify as "written notice" under UDO § 15.2.1.A, the four blurry, black-and-white copies of photographs attached to the NOV and contained in the record on appeal cannot be said to provide effective notice of any UDO violations.

Furthermore, as the facts of this case show, compliance with the description

requirement in UDO § 15.2.1.C does more than simply guarantee adequate notice to property owners. It also supplies the BOA with information necessary to evaluate the substance of NOV appeals. When, as here, the NOV lacks essential information, the BOA can find itself analyzing the sufficiency of the NOV instead of devoting its full attention to whether the available evidence proves the existence of a UDO violation.

Since we hold that the NOV served on the Market failed to comply with UDO § 15.2.1.C, we need not consider the Market's remaining arguments, such as its assertion that the NOV violated due process. We thus decline to reach the merits of those claims.

IV.

The NOV in this case failed to describe the Market's alleged site plan violations as required by the City's UDO. Accordingly, we reverse the judgment of the Court of Appeals and remand this case with instructions to the City to dismiss the NOV.

REVERSED AND REMANDED.